RIVERSIDE BANK v. FIRST NAT. BANK OF SHENANDOAH.

(Circuit Court of Appeals, Second Circuit. May 12, 1896.)

1. BILLS AND NOTES—CERTIFICATION BY BANK.

The certification by a bank of a note made payable at such bank, where the maker keeps an account, is an absolute promise by the bank to pay such note, not as the debt of another, but as its own obligation, entitling the holder to suspend any remedy against the maker and relax steps to charge an indorser, and cannot be rescinded by the bank because made under a misapprehension of fact as to the sufficiency of the maker's account to meet the note.

2. SAME—PAYMENT.

The payment of a note by the bank at which it is made payable, although made under misapprehension of the state of the maker's account with the bank, concludes the bank as against the holder of the paper who has surrendered it, and the payment cannot be recovered back of the holder.

In Error to the Circuit Court of the United States for the Southern District of New York.

Error is assigned of the ruling of the trial judge in directing the jury to find a verdict for the defendant. The facts shown upon the trial were these: The defendant was the owner, through a purchase for value, and in due course of business, of a promissory note dated May 2, 1887, made by Liebler & Co. to the order of and indorsed by Yuengling, and payable four months after date at the banking house of the plaintiff. The note was made merely for the accommodation of Yuengling. Shortly before maturity the defendant forwarded the note for collection to its correspondent at New York City, the National Park Bank, and that bank, through its uptown collecting agent, on September 3, 1887, presented the note to the plaintiff, with a request for certification. Liebler & Co. were customers of the plaintiff, and the plaintiff, supposing the account of the firm to be good for the amount of the note, made the certification. Shortly afterwards the plaintiff discovered that in fact the account of Leibler & Co. was not good for the amount of the note. Thereupon plaintiff endeavored to ascertain what bank was the owner of the note or had caused it to be presented for certification, but was unable to do so until late in the afternoon of September 5th. On the morning of September 6th plaintiff notified the National Park Bank that the note had been certified by mistake, and that at the time plaintiff was not in funds of Liebler & Co. sufficient to pay it, and requested that bank to withhold the note from its exchanges for the clearing house; but that bank refused to withhold the note. The First National Bank was the clearing-house bank for the plaintiff, and by the rules of the clearing house was obligated to pay all items against banks for which it cleared in the exchanges. When the note was sent, with the other exchanges of the National Park Bank, to the clearing house, the First National Bank paid it conformably with the rules. The rules of the clearing house provide that: "Errors of the exchanges, and claims arising from return of checks or from any other cause, are to be adjusted directly between the banks who are parties to them, and not through the clearing house; the association being in no way responsible in respect to them. All checks, drafts, notes, or other items in the exchanges returned as not good or missent shall be returned the same day directly to the bank from whom they were received, and the said bank shall immediately refund to the bank returning the same the amount which it has received through the clearing house for said check, draft, notes, or other items so returned to it, in specie or legal tender notes." The First National Bank did not return the note to the National Park Bank, but on September 6th the plaintiff caused it to be formally presented for payment and protested for nonpayment, giving notice thereof to Yuengling. The plaintiff produced the note, and offered to surrender it to the defendant.

Wheeler H. Peckham (Daniel Seymour, per brief), for plaintiff in error.

Robert D. Murray (per brief), for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge (after stating the facts as above). We are unable to discover any ground upon which the plaintiff was entitled to recover. The certification of the note by the plaintiff was an agreement to pay the amount, and the contract can no more be rescinded than could any other contract because one of the parties in making it was under a misapprehension of fact. A note made payable at a bank where the maker keeps an account is equivalent to a check drawn by him upon the bank; and the bank, if in funds, owes him a duty to pay it on presentation. Aetna Nat. Bank v. Fourth Nat. Bank, 46 N. Y. 88; Indig v. Bank, 80 N. Y. 100. The certification of a check drawn upon a bank is equivalent to the acceptance of a bill of exchange, and imposes upon the bank an obligation to pay the amount for which the check is drawn to the holder, upon demand, at any time before the statute of limitations attaches. Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 16 N. Y. 125. In Merchants' Bank v. State Bank, 10 Wall. 604, the court used this language:

"By the law merchant of this country the certificate of the bank that a check is good is equivalent to acceptance. It implies that the check is drawn upon sufficient funds in the hands of the drawee, that they have been set apart for its satisfaction, and that they shall be so applied whenever the check is presented for payment. It is an undertaking that the check is good then, and shall continue good; and this agreement is binding on the bank as its notes of circulation, a certificate of deposit payable to the order of the depositor, or any other obligation it can assume."

In Meads v. Bank, 25 N. Y. 143, it was held that the certification as good of a promissory note payable at bank, where the course of business between banks is, instead of actually paying notes of customers, when in funds, on presentment, to mark them as good, and settle in the exchanges, is an absolute promise to pay; not the agreement to pay the debt of another, but the engagement of the bank to pay its own debt to the holder of the note. The certification entitles the holder to suspend any remedy against the maker, and relax steps to charge the indorser of the paper. The bank has authority from the note itself to apply to its payment the funds of the maker (Kymer v. Laurie, 18 Law J. Q. B. 218), and when the holder accepts the certification the customer becomes a debtor to the bank. Thus the contract implied by the certification has both the elements of a good consideration, a resulting disadvantage to the promisee, and an accruing advantage to the promisor. Money paid under a mistake of fact is recoverable of the party receiving it, because good conscience forbids him to retain that which justly belongs to the other party; but the principle has no application to the case where the recipient has a right to retain the money because it has been paid pursuant to a contract which he was entitled to enforce. Assuming that the certification of the note, and its pay-

ment through the clearing house, was equivalent to a payment by the plaintiff over its counter to the defendant, the case falls within one of those exceptions to the general right to recover back money paid by mistake which are found in the law of negotiable paper. One of these exceptions is that the drawee of a bill of exchange is presumed to know the signature of the drawer, and payment by the drawee of the bill is ordinarily an admission of the genuineness of the signature, which he is not afterwards, in a controversy between himself and the holder, at liberty to dispute. Another exception, recognized by the decided weight of authority, is that the payment of a check or of a note by the bank at which it is made payable, although made under misapprehension of the state of the maker's account with the bank, concludes the bank as against the holder of the paper. Bolton v. Richard, 6 Term R. 139; Aiken v. Short, 1 Hurl. & N. 210; Levy v. Bank, 4 Dall. 236; Peterson v. Bank, 52 Pa. St. 206; Oddie v. Bank, 45 N. Y. 735; Bank v. Swift, 70 Md. 515, 17 Atl. 336; Bank v. Burkham, 32 Mich. 328. The cases of Bank v. Wetherald, 36 N. Y. 335, and National Park Bank v. Steele & Johnson Manuf'g Co., 58 Hun, 81, 11 N. Y. Supp. 538, are cited as authorities to the contrary. In Bank v. Wetherald the question was not whether the money could be recovered back from the party to whom it had been paid, but whether a payment made to that party, the holder of the note, after the bank had discovered its mistake, and made to enable the bank to resume the control of the paper, and take steps to charge the indorsers, was an extinguishment of the note. That adjudication is, therefore, not in point. The case of National Park Bank v. Steele & Johnson Manuf'g Co. is in point, and is entitled to respectful consideration, although not a judgment of the court of last resort; but we are unable to accede to its conclusions.

Upon principle, where the holder of a note presents it at the bank at which it is made payable, receives the money, and surrenders the paper, the transaction is, in effect, a purchase from the holder. It is a completed transaction, which cannot be rescinded except for fraud, or in case of mutual mistake. Where forged paper is delivered, the consideration fails and a different rule obtains. A case strictly analogous is where a bank accepts the check of a customer, and credits the amount to the account of the depositor. Of such a case the supreme court used this language:

"When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject it, or to receive it upon such conditions as may be agreed upon. If it be rejected, there is no room for any doubt or question between the parties. If, on the other hand, the check is offered as a deposit, and received as a deposit, there being no fraud, and the check genuine, the parties are no less bound and concluded than in the former case. Neither can disavow or repudiate what has been done. The case is simply one of an executed contract. There are the requisite parties, the requisite consideration, and the requisite concurrence and assent of the minds of those concerned." Bank v. Burkhardt, 100 U. S. 686.

To permit a bank which has paid a note or check of a customer to rescind the transaction because it discovers that it was mistaken in the state of the customer's account, would, as is pointed out by

Judge Cooley in Bank v. Burkham, supra, reverse the rule of commercial law, and transfer from the acceptor to the payee the responsibility which the former assumes by the acceptance and the loss, which should be left where it fell.  He said:

"We think it would be an exceedingly unsafe doctrine in commercial law that one who has discounted a bill in good faith, and received notice of payment, the strongest possible assurance that it was drawn with proper authority should afterwards hold the moneys subject to such a showing as the drawee might be able to make as to the influences operating upon his mind to induce him to make payment. The beauty and value of the rules governing commercial paper consists in their perfect certainty and reliability. They would be worse than useless if the ultimate responsibility for such paper, as between payee and drawee, both acting in good faith, could be made to depend on the motives which influenced the latter to honor the paper."

The facts of this case illustrate the truth of these observations. The defendant, relying upon a certification by the plaintiff, took no steps to charge the indorser upon the note; and, if this action could be maintained, in order to regain the situation in which it was placed by the act of the plaintiff, would be obliged to resort to the uncertain chances of a litigation with the indorser.  Treating the case as one in which the money was paid by the plaintiff over its counter to the defendant, the language of the court in Aiken v. Short is apposite:

"The plaintiffs, having voluntarily parted with their money to purchase that which the defendant had to sell, though no doubt it turned out different to and of less value than what they expected, cannot maintain the action."

The conclusions thus reached render it unnecessary to consider the question whether the defendant's situation was changed to its injury because the note was not protested upon Labor Day,—September 5th,—instead of September 6th.

The trial judge properly directed a verdict for the defendant, and the judgment should be affirmed.