[S. F. No. 1850. In Bank.—July 14, 1903.]

## CROCKER-WOOLWORTH NATIONAL BANK OF SAN FRANCISCO, Respondent, v. NEVADA BANK OF SAN FRANCISCO, Appellant.

CHECKS—FORGERY—COLLECTION THROUGH CLEARING-HOUSE—RULES— LIABILITY OF INDORSING BANK.—A bank which receives from one of its customers a check payable to his order, drawn by one bank upon another, the amount of which has been fraudulently raised, and has given the customer a provisional credit therefor, and indorses it "Pay only through clearing-house," is simply a holder for collection, and is not liable on the check as a general indorser. It has no other liability of warranty than that imposed by the clearing-house rules; and if such rules are not complied with by the bank on which the check is drawn and which has paid it, such bank cannot recover from the indorsing bank, which had meanwhile paid the money in good faith to its customer. [Shaw, J., dissenting.]

ID.—MISTAKE OF EQUALLY INNOCENT PARTIES—BURDEN OF LOSS.— Where equally innocent parties have dealt with one another under a mistake, the burden of loss resulting from the common error will ordinarily be left where the parties themselves have placed it; and a recovery can only be had where in equity and good conscience the defendant should be called upon to refund.

ID.—LOCAL CHECKS—CUSTOM OF BANKS AS TO COLLECTION—OWNERSHIP OF COLLECTING BANK NOT PRESUMED.—It is matter of common knowledge and common experience, supplemented in this case by testimony, that in the case of local checks it is the general custom of banks not to buy them, but to take them from their depositors and clients for collection; and it will not be presumed against such custom that the defendant bank was the general owner of the check, passed by it through the clearing-house to the plaintiff bank, as the drawee of the check, and that the plaintiff placed reliance on the supposed ownership of the defendant.

ID.—PLEADING—REPRESENTATIONS AS TO OWNERSHIP—RELIANCE OF PLAINTIFF—FINDING OUTSIDE ISSUES.—Where the plaintiff bank did not aver in its complaint that it relied upon any representations made by the defendant bank as to its ownership of the check,

but merely pleaded its own belief as to its genuineness, a finding that the defendant purported and represented itself to be the absolute owner of said check, and that plaintiff had no notice or knowledge that it was presented by the defendant otherwise than as owner and as principal, is outside of the issues as well as against the evidence.

ID.—OWNERSHIP NOT AVERRED—CONSTRUCTION AGAINST PLEADER.— Where the complaint does not aver ownership of the check by the defendant, but merely averred that it was the "holder" thereof, construing the complaint most strongly against the pleader, it might well be held upon such averment that plaintiff knew that defendant was not the owner.

ID.—PRESENTATION OF RAISED CHECK FOR PAYMENT—RESTRICTED IN-DORSEMENT.—The general rule that one who presents a check to a bank for payment in law represents the genuineness of the check, and is liable as if a general indorser, does not apply to extend the operation of a specially restricted indorsement, made for the sole purpose of collection through the clearing-house for a customer of the collecting bank. [Shaw, J., dissenting.]

ID.—SALE OF VOID INSTRUMENT—WARRANTY OF GENUINENESS—LAW OF CALIFORNIA.—In other states the sale of an invalid negotiable in-strument carries a warranty of its genuineness, but in this state, under section 1774 of the Civil Code, the sale carries merely a warranty that the seller has no knowledge of any facts tending to prove it worthless or invalid.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order deny-ing a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

D. M. Delmas, and R. Y. Hayne, for Appellant.

There was no warranty by the defendant's indorsement that the body of the check had not been altered. (*Redington* v. *Woods,* 45 Cal. 428, 429.[1]) The effect of the defendant bank's stamp was defined and limited by the clearing-house rules. (*Preston* v. *Canadian Bank,* 23 Fed. 179.) The principle of equity and good conscience will not permit a recovery by one innocent party against another. (*Stratton* v. *Rastall,* 2 Term Rep. 374; *Moses* v. *Macferlan,* 2 Burr. 1012; *Lock-wood* v. *Kelsea,* 41 N. H. 185-188; *National Bank of Com-merce* v. *National Mechanics' Assn.,* 55 N. Y. 213;[2] *Commer-*

---

[1] 13 Am. Rep. 190.    [2] 14 Am. Rep. 232.

*cial etc. Bank* v. *First National Bank,* 30 Md. 22;[1] *Boas* v. *Updegrove,* 5 Pa. St. 516;[2] *Appleton Bank* v. *McGilvray,* 4 Gray, 522, 523;[3] *Mayer* v. *Mayor,* 63 N. Y. 457; *Iron City Nat. Bank* v. *Fort Pitt Nat. Bank,* 159 Pa. St. 52; *Guild* v. *Baldridge,* 2 Swanst. 303, 304; *Walker* v. *Conant,* 65 Mich. 198; *Walker* v. *Conant,* 69 Mich. 329;[4] *McCall* v. *Corning,* 3 La. Ann. 409;[5] *First Nat. Bank* v. *Ricker,* 71 Ill. 444, 445;[6] *Fraker* v. *Little,* 24 Kan. 598.[7]) The defendant is charged in the complaint merely as "holder" of the instrument, which must be construed as consistent with the fact that defendant was the mere "holder" for collection. The construction should be against the pleader. (*Green* v. *Covillaud,* 10 Cal. 323;[8] *Sparks* v. *De la Guerra,* 14 Cal. 111; *De Castro* v. *Clarke,* 29 Cal. 16; *Gifford* v. *Carville,* 29 Cal. 595, 596; *Nevada County etc. Canal Co.* v. *Kidd,* 37 Cal. 318; *Gage* v. *Bates,* 40 Cal. 385; *Triscony* v. *Orr,* 49 Cal. 617; *Rogers* v. *Shannon,* 52 Cal. 107; *Salisbury* v. *Shirley,* 53 Cal. 465; *Collins* v. *Townsend,* 58 Cal. 614; *Callahan* v. *Loughran,* 102 Cal. 481.) The payment of the money by the defendant bank to its customer, without notice of plaintiff's claim, is a complete defense to the action. (*Buller* v. *Harrison,* 1 Cowper, 568; *Engles* v. *Heatley,* 5 Cal. 135; *Elliott* v. *Swartwout,* 10 Pet. 155; *La Farge* v. *Kneeland,* 7 Cow. 460; *National Park Bank* v. *Seaboard Bank,* 114 N. Y. 28;[9] *National City Bank* v. *Westcott,* 118 N. Y. 473, 474;[10] *Herrick* v. *Gallagher,* 60 Barb. 566; *Mowatt* v. *McLelan,* 1 Wend. 176; *Granger* v. *Hathaway,* 17 Mich. 507; *United States* v. *American Ex. Bank,* 70 Fed. 232; *Upchurch* v. *Norsworthy,* 15 Ala. 705; *Smith* v. *Binder,* 75 Ill. 495; *Shepard* v. *Sherin,* 43 Minn. 382; *Seidel* v. *Peckworth,* 10 Serg. & R. 444; *Gray* v. *Otis,* 11 Vt. 628; Story on Agency, sec. 300; Mechem on Agency, sec. 561.)

Lloyd & Wood, W. S. Wood, John Garber, Garber, Creswell & Garber, and Ralph C. Harrison, for Respondent.

The clearing-house rules did not preclude subsequent recovery back of money paid on a forged check. (*Merchants' etc.*

[1] 96 Am. Dec. 554.
[2] 47 Am. Dec. 425.
[3] 64 Am. Dec. 92.
[4] 13 Am. St. Rep. 391.
[5] 48 Am. Dec. 454.
[6] 22 Am. Rep. 104.
[7] 36 Am. Rep. 262.
[8] 70 Am. Dec. 725.
[9] 11 Am. St. Rep. 612.
[10] 16 Am. St. Rep. 771.

*Bank* v. *National Eagle Bank,* 101 Mass. 285; [1] *Exchange Bank* v. *Bank of North America,* 132 Mass. 149; *National Bank* v. *Bangs,* 106 Mass. 443; [2] *Merchants' Bank* v. *Commonwealth Bank,* 139 Mass. 519; *Clark* v. *National etc. Bank,* 32 App. Div. 316; 52 N. Y. Supp. 1064; *Tradesmen's Bank* v. *Third National Bank,* 66 Pa. St. 437; *Corn Exchange* v. *National Bank,* 78 Pa. St. 233; 2 Morse on Banks and Banking, 3d ed., sec. 448, p. 822; *Riverside Bank* v. *First National Bank,* 74 Fed. 277, 278; *First National Bank* v. *Northwestern Bank,* 152 Ill. 296.[3]) A bank paying an altered check may recover the amount paid. (*Parke* v. *Roser,* 67 Ind. 500,[4] citing *Marine Bank* v. *National Bank,* 59 N. Y. 67,[5] and *Security Bank* v. *National Bank,* 67 N. Y. 458;[6] *City Bank* v. *National Bank,* 45 Tex. 203, and cases cited; *Espy* v. *First National Bank,* 18 Wall. 604-622; *Redington* v. *Woods,* 45 Cal. 406;[7] *White* v. *Continental Nat. Bank,* 64 N. Y. 316;[8] *Crawford* v. *West Side Bank,* 100 N. Y. 54;[9] *Marine National Bank* v. *National City Bank,* 59 N. Y. 67;[10] *National City Bank* v. *Westcott,* 118 N. Y. 468;[11] *Oppenheim* v. *West Side Bank,* 22 Misc. Rep. 722; 50 N. Y. Supp. 148.) One who presents a check for payment in law represents that the paper is genuine, and that he is the owner. (*Leather Mfg. Bank* v. *Merchants' Bank,* 128 U. S. 26; *United States* v. *First National Bank,* 82 Fed. 410; *White* v. *Continental National Bank,* 64 N. Y. 317;[8] *Merchants' Bank* v. *McIntyre,* 2d Sanford, 431.) The greater negligence was that of the defendant. (*Ellis* v. *Ohio etc. Co.,* 4 Ohio St. 664.[12]) The check being presented by the defendant bank with Dean's indorsement on it, was a *prima facie* showing and assertion of ownership by the defendant bank. (*Cody* v. *City Bank,* 55 Mich. 382; *Metropolitan Bank* v. *Merchants' Bank,* 182 Ill. 367;[13] *Taft* v. *Quinsigamond Bank,* 172 Mass. 363; *Gray* v. *Bank,* 2 Litt. 378.) To support an indorsement for collection merely, the burden of pleading and proof was on the defendant bank. (*Mayer* v.

---

[1] 100 Am. Dec. 120.
[2] 8 Am. Rep. 349.
[3] 43 Am. St. Rep. 247.
[4] 33 Am. Rep. 102.
[5] 17 Am. Rep. 305.
[6] 23 Am. Rep. 129.
[7] 13 Am. Rep. 190.

[8] 21 Am. Rep. 612.
[9] 53 Am. Rep. 152.
[10] 17 Am. Rep. 305.
[11] 16 Am. St. Rep. 771.
[12] 64 Am. Dec. 610.
[13] 74 Am. St. Rep. 180.

*Mayor,* 63 N. Y. 457; *McWhirt* v. *McKee,* 6 Kan. 412; *Stack* v. *Bench,* 74 Ind. 571.[1])

Garret W. McEnerney, for Respondent, on Petition for Rehearing.

The cases are irreconcilable with the theory that it is matter of common experience that banks do not usually pay local checks. (*Taft* v. *Quinsigamond Bank,* 172 Mass. 363; *Marine Bank* v. *National Bank,* 59 N. Y. 67;[2] *Third National Bank* v. *Allen,* 59 Mo. 310; *Espy* v. *Bank,* 18 Wall. 604; *Parke* v. *Roser,* 67 Ind. 500;[3] *Schroeder* v. *Hanly,* 75 Ill. 638; *Corn Exchange Bank* v. *Nassau Bank,* 91 N. Y. 74;[4] *Cody* v. *City Bank,* 55 Mich. 79; *Metropolitan Bank* v. *Merchants' Bank,* 182 Ill. 367;[5] *First National Bank* v. *City Bank,* (Mass.) 65 N. E. Rep. 24; *Ogden* v. *Benas,* L. R. 9 Com. P. 516; *National Bank* v. *Burkhardt,* 100 U. S. 686-693; *Thompson* v. *Riggs,* 5 Wall. 663-680; *Metropolitan* v. *Loyd,* 90 N. Y. 536; *Hoffman* v. *First National Bank,* 46 N. J. L. 604; *Eufaula etc. Co.* v. *Missouri National Bank,* 118 Ala. 408; 24 So. 389; and most especially *Citizens' National Bank* v. *City National Bank,* 111 Iowa, 211.)

Smith & Pringle, *Amici Curiæ,* for Respondent, on Petition for Rehearing.

The fact of agency of the defendant bank not appearing upon the face of the check, or made known to the drawee, the drawee has a perfect right of recovery. (*Bank of Commerce* v. *Union Bank,* 3 N. Y. 230; *Canal Bank* v. *Albany,* 1 Hill, 287; *White* v. *Continental National Bank,* 64 N. Y. 316;[6] *Corn Exchange Bank* v. *Nassau Bank,* 91 N. Y. 74;[4] *Fuller* v. *Smith,* 1 Car. & P. 197; Chitty on Bills (ed. 1845), p. 245; *Durrant* v. *Commissioners,* L. R. 6 Q. B. Div. 405; *Kingston* v. *Eltinge,* 40 N. Y. 391.[7])

HENSHAW, J.—This is an action by plaintiff to recover money paid by mistake upon a raised check. The facts are,

[1] 39 Am. Rep. 113.
[2] 17 Am. Rep. 305.
[3] 33 Am. Rep. 102.
[4] 43 Am. Rep. 655.
[5] 74 Am. St. Rep. 180.
[6] 21 Am. Rep. 612.
[7] 100 Am. Dec. 516.

that upon the ninth day of December, 1895, the Bank of
Woodland, in Yolo County, California, drew its check upon
the Crocker-Woolworth National Bank of San Francisco
for twelve dollars, to the order of one A. H. Dean. At that
time, and for some little time prior thereto, Dean was a
"client" of the Nevada Bank of San Francisco, and had
therein a commercial account, with one or two thousand dol-
lars to his credit. Dean fraudulently altered the check by
changing its date from December 9th to December 13th, and
raising its amount from twelve dollars to twenty-two thousand
dollars. On the 17th of December, 1895, he placed his name
by way of general indorsement upon the back of the check
and deposited it with the Nevada Bank, making out and
delivering with the check the usual deposit tag. The bank
thereupon entered upon the pass-book of Dean a "provisional
credit" for the amount of the fraudulent check. On the
seventeenth day of December, 1895, the Nevada Bank placed
its clearing-house stamp upon the back of the check and sent
it to be cleared in the usual way. The clearing-house is an
association of banks, acting under a regular constitution
and agreement signed by all of its members. Both parties to
this action are members of it. Its purpose is the adjustment
of balances between the members, which is done twice on
every business day. The check found its way in regular
course from the clearing-house to the Crocker-Woolworth
National Bank, which was the correspondent of the Bank of
Woodland, and had funds of the Woodland bank on deposit,
and was honored, under the clearing-house rules, by the pay-
ment over to the clearing-house of the balance found due
against it, the Nevada Bank receiving the credit due to it.
On the day after the payment was so made,—that is, on
December 18th, Dean checked out of the Nevada Bank the
sum of twenty thousand dollars, leaving about two thousand
dollars of the amount of the raised check still to his credit,
and fled the country. He was a forger, a common criminal,
and insolvent. The Crocker-Woolworth Bank did not inform
its correspondent, the Bank of Woodland, of the payment
of the check until the third day of January following. On the
4th of January it ascertained from the Bank of Woodland
that no such check had been drawn, and consequently knew

that a fraud had been perpetrated. It notified the Nevada Bank, and demanded repayment of the twenty-two thousand dollars, and offered to return the raised check.

Mistake is the *gravamen* of this action. It is alleged in the complaint to have consisted "in the belief on the part of plaintiff that said check had been actually and in fact drawn, made, and issued by said Bank of Woodland for said sum of twenty-two thousand dollars and dated December 13, 1895, and had not been fraudulently or otherwise altered in said or any respects, and such belief in the then present existence of such facts was material to such payment, and without such belief plaintiff would not have paid said sum or any part thereof."

The cause was tried without a jury. The court made findings, some of which will hereafter be more fully considered, and gave judgment for plaintiff. Defendant's motion for a new trial was denied, and from the judgment and from the order denying its motion this appeal is taken.

So far as the defendant is concerned, it is not contended but that it acted with perfect honesty and in the utmost good faith in presenting the check, and it is not in controversy but that, upon payment by the plaintiff, the money was in turn, upon the check demand of the depositor, paid over to him. No benefit was reaped, no advantage gained by defendant in the transaction. As between the defendant and its depositor, Dean, the findings clearly establish that the bank was but the agent for collection merely, and as such did, as in law was its duty to do, pay over the money to its principal upon his demand.

This action, then, as we have said, is one for the recovery of money paid by mistake, and it is of consequence to bear in mind at the outset of this consideration the well-settled principles governing the right of recovery in such cases. The action, even when in form a legal action for money had and received, always addresses itself to the equitable consideration of the court. The governing principle is this: that where equally innocent persons have dealt with one another under a mistake, the burden of loss resulting from the common error ordinarily will be left where the parties themselves have placed it, and so a recovery can only be had where in equity

and good conscience the defendant should be called upon to refund. (*Holly* v. *Missionary Society,* 180 U. S. 284.)

In *Stratton* v. *Rastall,* 2 Term Rep. 370, Buller, J., speaks as follows: "Of late years this court has very properly extended the action for money had and received; it is founded on principles of justice, and I do not wish to restrain it in any respect. But it must be remembered that it was extended on the principle of its being considered like a bill in equity. And, therefore, in order to recover money in this form of action, the party must show that he had equity and conscience on his side, and that he could recover it in a court of equity. . . . In conscience, he only who receives the money ought to be obliged to pay it back; and a court of equity would inquire in this case whether the party had received the money, or not. Now, if a court of equity would give this plaintiff no relief, we ought not to permit him to recover in a court of law in an action founded upon equitable principles."

The same idea is expressed by Lord Mansfield, in *Moses* v. *Macferlan,* 2 Burr. 1012: "This kind of equitable action, to recover back money which ought not in justice to be kept, is very beneficial, and therefore much encouraged. It lies only for money which, *ex æquo et bono,* the defendant ought to refund. . . . It lies for money paid by mistake; or upon a consideration which happens to fail; or for money got through imposition (express or implied); or extortion; or oppression; or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances. In one word, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money."

In *London and River Bank* v. *Bank of Liverpool,* 1 L. R. Q. B. D. (1896), p. 7, Mr. Justice Mathew says: "If the mistake is discovered at once, it may be the money can be recovered back; but if it be not, and the money is paid in good faith, and is received in good faith, and there is an interval of time in which the position of the holder may be altered, the principle seems to apply that money once paid cannot be recovered back. That rule is obviously, as it seems to me, indispensable for the conduct of business."

In *National Bank of Commerce* v. *National Mechanics'
Assn.*, 55 N. Y. 213-216,[1] the principle is thus stated: "It
is now settled, both in England and in this state, that money
paid under a mistake of fact may be recovered back, however
negligent the party paying may have been in making the
mistake, unless the payment has caused such a change in the
position of the other party that it would be unjust to require
him to refund. . . ."

Mr. Daniel (2 Daniel on Negotiable Instruments, 3d ed.,
sec. 1655) says: "Where the bank discovers the forgery im-
mediately and demands restitution, offering to return the
check before the holder has lost anything by regarding the
matter as all right, we cannot help thinking that it should be
entitled to recover back the amount. Mr. Chitty seems to
have had the same opinion. And Professor Parsons has ex-
pressed it in favorable terms. And the better doctrine, as we
think, is *that the bank should have the right to recover, unless
the circumstances of the holder had been changed so as to
render it unjust.*"

Mr. Daniel is here speaking of the forgery of the drawer's
signature. In discussing that narrower class of forgeries,
such as the one at bar, where the signatures are all genuine,
but the amount of the check has been increased, a kind of
forgery known as "raising a check," he says, where money
is paid by a bank on such a check by a mistake, the general
rule is, that it may be recovered from the party to whom it
was paid, as having been paid without consideration. This is
undoubtedly the "general rule," as Mr. Daniel declares, but
the rule is always subject to the most important qualification,
which he points out in his next sentence: "The bank is not
bound to know anything more than the drawer's signature,
and *in the absence of any circumstance that inflicts injury
upon another party,* there is no reason why the bank should
not be reimbursed." (2 Daniel on Negotiable Instruments,
5th ed., sec. 1661.)

And Professor Keener (Keener on Quasi Contracts, p. 67)
says: "To say that a plaintiff can recover money paid by
mistake, notwithstanding the recovery will throw a loss upon
the defendant, provided the plaintiff is under no obligation

---

[1] 14 Am. Rep. 232, and note.

to the defendant, is to lose sight of the grounds upon which a recovery is allowed, viz: that the defendant has money which in conscience he cannot keep. It seems difficult to establish in a case where the defendant cannot be said to be more responsible for the mistake made by plaintiff than is plaintiff himself, that he should in conscience return to the plaintiff money paid under mistake where the result of such payment is to throw loss upon the defendant which he would not have suffered had not the payment been made. The principle that forbids the defendant enriching himself at the expense of the plaintiff should clearly forbid the plaintiff indemnifying himself against loss at the expense of an innocent and blameless defendant.''

We have quoted at this great length because these principles are all-important in determining whether a recovery should be allowed or withheld from plaintiff. The application of them, however, is frequently affected by other well-settled rules of mercantile law, to which consideration must always be paid.

Thus, it is the law beyond controversy that the drawee of a negotiable instrument is chargeable with knowledge of the genuineness of the signature of the drawer, of the condition of his funds, and of the state of his credit. If the drawee pays upon the forged signature of the drawer, he cannot recover against an innocent payee, if the recovery would subject such payee to loss. Such has been the rule since *Price* v. *Neall*, 3 Burr. 1354, decided by Lord Mansfield in 1762.

Again, where, as in the present case, the forgery consists in changing the body of the check so as to raise the amount, as the drawee is not charged with knowledge of the handwriting of whomsoever may have prepared the body of the check, he may, even if negligent, recover upon the ground of mistake, provided that his recovery would not pass the burden of loss over to an innocent payee, who had changed his condition upon faith of the payment. That is to say, where the drawee has done any act to give currency to the paper, as by acceptance, etc., on the faith of which the holder has taken, or the condition of the holder will be altered for the worse in any way, as where he received the check for collection and paid over the proceeds to the principal before he received notice

of the alteration, then the party paying is precluded from recovering by the ordinary rules of estoppel—otherwise not.

Still further, an implied warranty of genuineness accompanies the unrestricted indorsement and transfer of any negotiable instrument. It is an assurance to the drawee of its genuineness in all respects saving that of the name of the drawer alone, with which knowledge the drawee is charged. (Chitty on Bills (ed. 1845), p. 245; *Jones* v. *Ryde*, 5 Taunt. 488; *Wilkins* v. *Johnson*, 3 Barn. & C. 428; *Herrick* v. *Whitney*, 15 John. 240; Story on Bills of Exchange, secs. 110, 235.) This warranty of a general indorsement is declared in our state by section 3116 of the Civil Code.

An examination of the cases will show that in all well-considered adjudications, recognition, tacit or express, is given to these principles. Their ultimate analysis amounts to this: that plaintiff, even if negligent, may recover if his act has not changed the position of an innocent defendant to his detriment. Therefore, where defendant has become the owner of the instrument uninfluenced by any act of the plaintiff, or where by general indorsement defendant has warranted the instrument, and has estopped himself from denying ownership and genuineness, plaintiff may have recovery. Thus in *Bank of Commerce* v. *Union Bank*, 3 N. Y. 230, a raised check was presented by defendant bank bearing its general indorsement and a recovery was allowed. It was there argued that notwithstanding the defendant bank was in fact merely a collecting agent, its general indorsement was a warranty of genuineness. In *Marine National Bank* v. *National City Bank*, 59 N. Y. 67,[1] a check, genuine as to the drawer's signature, but forged as to the payee's name, and raised as to the amount, was presented to D. & Co., gold brokers, in payment for some purchased gold. They sent the check to plaintiff bank, the drawee, where it was certified. D. & Co. then paid it into the defendant bank, which accepted it. The defendant bank in turn presented it to plaintiff bank, where it was paid. Upon the same day the plaintiff discovered the alterations, and gave notice to the defendant, with the demand that it refund. Throughout the action the defendant was treated as the owner of the check. Its defense in support of its refusal

[1] 17 Am. Rep. 305.

of payment was based upon the certification by the plaintiff bank of the check after it had been raised, and the decision of the court was largely addressed to this matter, it being held that the certification went no further than to the genuineness of the drawer's signature, and to the amount of his funds or credit. In *Third National Bank* v. *Allen*, 59 Mo. 310, plaintiffs were private bankers, and bought a raised check from a stranger. They presented it to plaintiff, the drawee, and it was paid. Upon prompt discovery of the forgery and notification to the defendants, a recovery was allowed. Here the defendants were the owners of the check, and had purchased it upon their private account, and plaintiff, not having in any way induced the defendants to change their position, was entitled to a recovery. *Parke* v. *Roser*, 67 Ind. 500,[1] was almost precisely the case of *Marine National Bank* v. *National City Bank*, 59 N. Y. 67,[2] the defense turning merely on the declaration of the bank that the check was good. The defendant was the owner of the raised instrument. In *Espy* v. *Bank of Cincinnati*, 18 Wall. 604, a raised check, offered in payment for bonds and gold purchased, had been sent to the bank for information, and the teller of the bank replied that it was good. The principle is there announced that where money is paid on a raised check by mistake, neither party being in fault, the general rule is, that it may be recovered back as paid without consideration; but if either party has been guilty of negligence or carelessness by which the other has been injured, the negligent party must bear the loss. And it was held that the declaration of the bank's teller that it was good referred only to the genuineness of the drawer's signature and to the condition of his account. The case most nearly analogous to the one at bar is that of *National Bank of Commerce* v. *National Mechanics' Banking Assn.*, 55 N. Y. 211.[3] The genuine check of a depositor in the plaintiff's bank, drawn to one Greenleaf, was taken to the bank and there certified. After certification it was fraudulently raised by Greenleaf from $56.75 to fifteen thousand dollars, and was deposited by Greenleaf with the defendant. Greenleaf was a client of defendant, and made other deposits upon that

[1] 33 Am. Rep. 102.

[2] 17 Am. Rep. 305.

[3] 14 Am. Rep. 232, and note.

date, amounting, with the raised check, to twenty thousand dollars. Upon the same day, he drew out in money substantially all of his deposits, including the amount of the raised check. Upon the next day the plaintiff bank paid the defendant bank the amount of the raised check, through the clearing-house. Upon discovery of the fraud the action was brought. It is pointed out that the defendant bank had paid the money upon the raised check to its fraudulent depositor, and thus had become the owner of it, and that it had done this uninfluenced by any act of the plaintiff bank. The court says:—

"On general principles, mere negligence in making the mistake is not, as has been already shown, sufficient to preclude the party making it from demanding its correction. Such negligence does not give to the party receiving the payment the right to retain what was not his due, unless he has been misled and prejudiced by the mistake. If his loss had been incurred and become complete before the payment, he should not, in justice, be permitted to avail himself of the mistake of the other party to shift the loss upon the latter. . . . If the defendant had shown that it had suffered loss in consequence of the mistake committed by the plaintiff, as, for instance, if, in consequence of the recognition by the plaintiff of the check in question, the defendant had paid out money to its fraudulent depositor, then, clearly, to the extent of the loss thus sustained, the plaintiff should be responsible. But it appears that all the money which Greenleaf, the fraudulent depositor, obtained from the Mechanics' Banking Association, on the credit of the altered check, was paid out on the sixteenth of February, the day before the check was presented to the plaintiff. . . . The recognition of this check by the plaintiff, on the seventeenth of February, could not have had any influence upon the action of the Mechanics' Banking Association in paying Greenleaf's drafts on the sixteenth. The loss occasioned by those payments had been fully incurred by the Mechanics' Banking Association before the plaintiff had made the mistake which it seeks in this action to have corrected."

The facts in the case at bar, summarized, amount to this: by the affirmative error of plaintiff, money was paid to de-

fendant, who was the agent of Dean; the defendant, after receiving payment, did, as in law it was bound to do (*Svendsen v. State Bank*, 64 Minn. 40[1]), pay the money to its principal upon his demand, and thus changed its position so that, if recovery is had, the loss must inevitably be borne by it. The application of the principles above enunciated to these facts would absolutely bar a recovery, unless there be some peculiar feature of the transaction, some especial act of the defendant, which takes the case out of their operation, and which, by reason of defendant's own conduct, casts liability upon it.

The acts, facts, and circumstances which by respondent are held thus to render the defendant liable, are epitomized in the following finding of the court. After making findings clearly establishing that, as between the defendant and its depositor, Dean, the bank had taken the check for purposes of collection only, the court adds: "At and before the time of making such payment, the plaintiff had no notice or knowledge whatever that the defendant was not, *as it purported and represented itself to be,* the absolute owner and holder of said check, and no notice or knowledge that the said check was presented by the defendant as agent for collection only, or otherwise than as owner and principal." The value and importance of this finding to support the judgment arises from the principle above stated, that if one be, or hold himself out as, the owner of such paper, then a recovery may be had against him, if it be seasonably sought, because he will be the holder of money paid, which in good conscience and equity he should not be allowed to retain; whereas, in the case of a known agent, recourse is limited to the principal. Of course, the all-governing rule being that the defendant holds money which in good conscience he is not entitled to retain, it can matter not whether (if in fact he was an agent) this agency be known or unknown to the drawee, provided only that the drawee did not part with the money upon the faith of the apparent principalship. In one case, it might be that the money was paid because of the belief of the drawee that the holder and presenter of the paper was the actual and responsible owner of it. In another case, it might be paid

---

[1] 58 Am. St. Rep. 522.

with total indifference to this fact. In the one instance, therefore, the plaintiff would have a right to rely for a recovery upon the ownership, real or apparent, of the person presenting the bill or check, while in the other, since the payment was in no wise made upon faith or reliance in the apparent state of facts, the defense that the payee was in truth but an agent, and had parted with the money to his principal, should be permitted to avail.

In this case, the finding of the court, as above quoted, is, that the defendant "purported and represented itself to be the absolute owner of said check, . . ." and that plaintiff "had no notice nor knowledge that the check was presented by the defendant otherwise than as owner and as principal."

The only support which this finding receives comes from the uncontradicted facts touching the method of the presentation and payment of the check. It already has been stated that the check was presented in regular manner through the clearing-house, of which institution both plaintiff and defendant were members. The constitution and rules of the clearing-house, which were strictly followed by defendant, here become important for consideration. Section 2 of article XV and sections 1, 2, and 3 of article XVII of the constitution are as follows:—

Article XV: "Section 2. Errors in the exchanges and claims arising from the return of checks, or from any other cause, are not to be adjusted through the clearing-house, but directly between the members who are the parties to them; all checks, drafts, notes, or other items in the exchanges, found not good, or missent, shall be returned without intentional mutilation or notice of dishonor given directly to the member from whom they were received, as soon as examined, or presented not later than two hours on ordinary days, or three hours on collection day, from the hour set for the clearance in which said returned vouchers were exchanged, and the said member shall immediately refund to the bank returning the same the amount for which it had received credit through the clearing-house for the said checks, drafts, notes or other items so returned to it; in case of the refusal or inability of any member to promptly refund to the bank presenting such checks, drafts, or other items so returned, the bank holding

them may report to the manager of the clearing-house the amount of the same, and it shall be the manager's duty, with the approval of the clearing-house committee, to take from the settling sheet of both members the amount of such checks, drafts, or other items so reported, and to readjust the clearing-house statement, and declare the correct balances in conformity with the changes so made, provided that such report of default shall be given to the manager before the hour set for payment by him of the credit balances resulting from that day's exchanges.''

Article XVII: ''Section 1. All negotiable paper originally made payable to the order of any bank in this association and deposited for clearance, shall be officially indorsed in writing by such original payee.

''Sec. 2. All negotiable paper deposited for clearance by the members of this association shall bear the stamp of the depositing bank, which shall clearly indicate the name of the bank, its clearing-house number, and the date of clearance. *The stamp shall be for clearing-house purposes only, and shall guarantee the validity and regularity of all prior indorsements on the paper so cleared, except the indorsement of an original payee of a certificate* of deposit, and it shall not be construed to supply a missing indorsement.

''Sec. 3. Each bank shall file with every other member of this association a certified impression of its clearing-house stamp and certification stamp, and the signatures of persons authorized to certify and indorse checks.''

The check in question bore the defendant's clearing-house stamp in these words: ''Pay only through clearing-house. Dec. 17th, 1895. 16. The Nevada Bank of San Francisco.'' With this stamp upon its back, it was passed with other checks into the clearing-house and paid by plaintiff. Admittedly, the only representation of ownership of any kind whatsoever to support this finding is contained in this stamped indorsement, coupled with the presentation through the clearing-house. The plaintiff does not even plead that the defendant was the ''owner'' of the check, but pleads merely that he was the ''holder.'' The distinction is, or may be, important. One may be the holder of a check, and not the owner, and under the rule which construes a pleading most strongly against the

pleader, it might well be held upon the very averment of the complaint that plaintiff knew that defendant was not the owner. "The term 'holder' is properly applied to the person having possession of the paper and making the demand, whether in his own right or as an agent for another." (*Bowling* v. *Harrison*, 6 How. 258.) " 'Holder' is a word of the same import as 'bearer'." (*Putnam* v. *Crymes*, 1 McMull. 9.[1]) " 'Holder' is a general word applied to any one in actual or constructive possession of the bill, and entitled at law to recover or receive its contents from the parties to it." (Biles on Bills, p. *2.) Moreover, it may be noted that there is no averment in the complaint that the plaintiff paid upon the belief that defendant was such owner, but the explicit statement is, that it paid in the belief that the check was genuine, and not fraudulently altered, "and without such belief plaintiff would not have paid such sum or any part thereof."

But, passing this, as being at least persuasive against the finding of the court that the defendant represented itself to be the owner, and that plaintiff paid only upon that representation, we come to consider the effect of the stamped indorsement which the Nevada Bank placed upon the check. Indorsements are either general or restrictive, and the effect of a general indorsement is well established in mercantile law. The indorser warrants to every subsequent holder thereof not liable to him that the paper is in all respects what it purports to be, that he has good title to it, that the signatures of all prior parties are binding upon them, and that if the instrument be dishonored, he will, unless himself exonerated, pay upon due notice given. (Civ. Code, sec. 3116.) A special indorsement is one which specifies the indorsee, and "may, by express words to that purpose, but not otherwise, be so made as to render the instrument not negotiable." (Civ. Code, secs. 3113, 3115.) But while this is the ordinary effect of a general indorsement in the commercial world, it is perfectly competent for banks associated together to bind themselves by rules governing, as between themselves, the effect of their indorsements, and these rules, as to them, will supplant the law. It will be noted in the sections of the constitution of the clearinghouse above quoted, that all negotiable paper originally made

---

[1] 36 Am. Dec. 250.

payable to the order of any bank belonging to the association, and deposited for clearance, shall be *officially indorsed in writing by such original payee,* while all other negotiable paper deposited for clearance by members of the association shall bear merely "the stamp of the depositing bank, which shall clearly indicate the name of the bank, its clearing-house number, and the date of clearance. *The stamp shall be for clearing-house purposes only, and shall guarantee the validity and regularity of all prior indorsements on the paper so cleared, except the indorsement of an original payee of a certificate of deposit, and it shall not be construed to supply a missing indorsement.*" Here, then, is an express limitation of the effect of such indorsement as this check bore. It eliminates, amongst other things, from the warranty of indorsement the code provision that the instrument "is in all respects what it purports to be." In short, it would seem as though the framers of the constitution of the clearing-house with deliberation followed the decision of this court in *Redington* v. *Woods,* 45 Cal. 428,[1] where it is said: "But the indorsement of the holder receiving payment can have, at most, no greater legal significance than this. It implies, at best, only an undertaking that he has a valid *title* to the bill or check, and consequently a right to receive payment—an implication which the law raises without the indorsement. But the indorsement, *proprio vigore,* imposes upon him no other or greater liability to refund money paid upon an altered check than would attach to him without the indorsement. In other words, *the indorsement does not, of itself, import an undertaking that the check has not been altered;* and in proceedings to recover back the amount paid on an altered check *the indorsement could not be made the foundation of the action,* as importing a promise to refund the money in case it should afterwards appear that the amount in the body of the check had been fraudulently altered."

The members of the clearing-house, by their constitution, have brought themselves strictly within this language from the Redington case. Moreover, it is at once apparent that under the constitution of the clearing-house such an indorsement is not only limited and special, so as to destroy the

---

[1] 13 Am. Rep. 190.

negotiability of the instrument, but that the rules were designedly drawn to effect this purpose. It is provided that "The stamp shall be for clearing-house purposes only." The indorsement itself is to the effect that the check shall be paid *only through the clearing-house,* which means, of course, *to* the clearing-house. This method of payment is established by the rules. It amounts merely to a system of sets-off and cancellations, whereby accounts are settled between members without the actual transfer of unnecessary funds. From any aspect of this indorsement, therefore, it was not sufficient to charge the defendant with being anything other than the plaintiff pleads it was,—"the holder of the check,"—and certainly the indorsement contained and conveyed no "representation" whatsoever to the plaintiff that the defendant claimed or asserted itself to be the owner of the check. Common knowledge and common experience inform us that in the case of local checks such as this, it is the uniform, if not the well-nigh universal, practice for banks to take them from their depositors and clients for collection only. They do not "buy" them. They take them as agents. And if this common knowledge needed re-enforcement, it is abundantly furnished by the evidence of the officers of the banks testifying in this case, to the effect that if it was not the uniform practice never to buy local checks, it was certainly the general practice to take them only for purposes of collection. Therefore, so far as this check so deposited and so presented to plaintiff is concerned, the knowledge that it conveyed was at least the knowledge that in this transaction, as in thousands of others, the Nevada Bank was probably the collecting agent merely. It will not be assumed against the uniform practice of banks in this regard, and in the absence of any evidence at all upon the subject, that the plaintiff here, and in this sole and peculiar instance, put reliance upon the supposed ownership of the check by defendant. If indeed it did have such belief, then the complete answer is, that the restricted indorsement did not justify nor warrant it in that belief, nor make the defendant liable because such relief was entertained.

But there is not only no evidence to support the finding that the Nevada Bank represented itself to be the owner, but there is positive evidence, in addition to that already pointed out,

to show that plaintiff bank before payment of its check knew, or at least believed, that the Nevada Bank was acting as collecting agent for Dean. This evidence is found in the testimony of Mr. Kline, plaintiff's cashier. Mr. Kline, after stating that he looked over the checks coming through the Nevada Bank, and saw and read the particular check in question, within the time allowed by the clearing-house rules for its rejection and return, testifies: "Q. What is it you did not notice at the time?—A. To whom it was payable. I merely knew it was a check of some client of the Nevada Bank and presented for cash in that manner.—Q. How did you know it was a client of the Nevada Bank?—A. Because of its coming in the envelope of the Nevada Bank."

It is insisted, however, by respondent that the judgment in its favor is to be supported upon other grounds than that of appellant's liability as an indorser, and that the finding in question derives support from the fact that the appellant presented the check for payment. It is to be remembered that the only representations which the Nevada Bank made were those which follow in law from the mere fact of the delivery of the check to the clearing-house for clearance; but it is said that the presentation of the check was a representation of the genuineness of the signatures of the title of the presenter, and that the check was in all respects what it purported to be; in short, that the presentation with or without indorsement was a representation of everything which the law declares to be warranted by a general indorsement. In support of this proposition are cited some cases. Thus, in *Merchants' Bank* v. *McIntyre,* 2 Sanford, 431, where the forgery was of the signature of a prior indorser, it is said: "We hold it to be a principle of universal application that where one presents a draft or check to a bank for payment, it is a representation of the genuineness of the signatures appearing upon it, and except where the drawer's signature is forged, or there is some other peculiar reason for taking the case out of the rule, the party so presenting the draft will be held responsible to the drawee for the authenticity of such signature." In *White* v. *Continental National Bank,* 64 N. Y. 316,[1] it is said: "The presentation of the bill and the demand and receipt of the money thereon, was equiva-

[1] 21 Am. Rep. 612.

lent to an indorsement." In *Leather Manufacturing Bank* v. *Merchants' Bank,* 128 U. S. 26, 9 Sup. Ct. Rep. 3, it is said: "One who by presenting forged paper to a bank procures the payment of the amount thereof to him, even if he makes no express warranty, in law represents that the paper is genuine, and, if the payment is made in ignorance of the forgery, is liable to an action by the bank to recover back the money, which in equity and good conscience has never ceased to be its property." The principle upon which these cases are decided is either—1. That the presentation is the equivalent of a general indorsement under which all of these things are warranted; or 2. That the presentation upon the one hand, and the reception and payment of money upon the other, amount to a sale and purchase, and, the consideration for the sale having failed, a recovery back may be had. The cases above cited bear upon the first theory. Upon the second it is sufficient to quote from the United States circuit court, where Judge Wallace says: "Upon principle, where the holder of a note presents it at the bank at which it is made payable, receives the money, and surrenders the paper, the transaction is in effect a purchase from the holder." (*Riverside Bank* v. *First National Bank,* 74 Fed. 276.)

But in the present case the application of neither of these theories will aid in the support of the finding in question. As to the first, it is clear that mere presentation will not operate to enlarge a special and restricted indorsement into the general indorsement contemplated by section 3116 of the Civil Code. It would be preposterous to say that one who had carefully restricted his liability by special indorsement should, by the mere presentation of the check, have his situation changed to that of a general indorser. The principle, therefore, is not applicable to the case of a special indorsement, and in the case of a general indorsement it is quite unnecessary in this state to invoke it, since the matter is fully covered by the section of our code above referred to. Upon the second theory, that the presentation and payment amount to a sale with warranty by the seller, whatever may be the rule as to such warranties in other states, in this state, where the warranties are those, and those only, fixed by our code, the principle is at variance with those provisions, and therefore cannot apply. Section 1764

of the Civil Code provides: "Except as prescribed in this article, a mere contract of sale or agreement to sell does not imply a warranty." Section 1774 declares: "One who sells or agrees to sell an instrument purporting to bind any one to the performance of an act, thereby warrants that he has no knowledge of any facts which tend to prove it worthless, such as the insolvency of any of the parties thereto, where that is material, the extinction of its obligations, or its invalidity for any cause." These code provisions were under consideration in *Sutro* v. *Rhodes*, 92 Cal. 117, where it is held that, if an invalid negotiable instrument, such as overissued bonds, be presented for sale, both parties being equally innocent, the purchaser cannot recover back his money. The distinction, then, is, that in the other states the sale carries a warranty of genuineness; in this state the sale carries merely a warranty that the seller has no knowledge of defects. It is concluded upon this branch of the case, therefore, that the finding is without support from the evidence. It may be added that the plaintiff nowhere pleads reliance upon any representations made by defendant, but pleads merely its own belief in the genuineness of the instrument. The finding, therefore, is without the issues joined. As was said in *Goings* v. *White*, 32 Ind. 126, "There is no averment that the plaintiff relied upon the representations of the defendant. The want of such averment cannot be supplied by a recital of evidence which might justify a presumption that the representations were relied upon, unless such evidence be conclusive of the fact."

For the foregoing reasons the judgment and order are reversed, and the cause is remanded.

McFarland, J., Van Dyke, J., Lorigan, J., and Beatty, C. J., concurred.

SHAW, J., dissenting.—I dissent. The law relating to the warranties which are implied by the sale of an instrument in writing, as provided in section 1774 of the Civil Code, does not apply to this case. Notwithstanding the opinion of Judge Wallace in *Riverside Bank* v. *First National Bank*, 74 Fed. 276, I am of the opinion that one who presents a check to the bank upon which it is drawn, and demands payment of the amount written therein, does not thereby offer to sell the check

to the drawee. And if the payment is made and the check delivered to the drawee, the transaction is not in any true sense a sale of the check. The payee or holder is merely demanding performance of the obligation which he holds. The drawee is merely performing that obligation, and he takes the check, not as upon a sale, but as a voucher or receipt against the fund held by him for the drawer. It may be that if a case arose where, for the protection of the drawee, it became necessary to consider him a purchaser, or as having the rights of a purchaser, of the check, the law would raise an implication of a purchase in order to do justice, but this would be a fiction such as the law sometimes indulges in for the ends of justice, and it does not change the actual relation of the parties, nor the actual effect and character of the transaction.

Nor does the qualified indorsement of the Nevada Bank, coupled with the rules of the clearing-house with respect to it, imply any warranty such as would be implied from an ordinary indorsement. The indorsement as made, and as so qualified, amounted to no more than would an oral demand for payment. There is therefore no question here as to the effect of a warranty arising from an implied sale or from the indorsement. It follows that the modifications found in the Civil Code of the common-law rules respecting implied warranties, do not change the effect of the authorities upon the question of the right to recover money innocently paid by mistake upon raised checks. The right to the recovery does not rest upon the theory that there is a warranty.

The fact that the defendant had paid over the money to Dean, the forger, before notice of the fraud, did not, under the circumstances of the case, relieve it from liability to the plaintiff. If the agency of the defendant had been known to the plaintiff, the rule in this respect would have been different. For that knowledge would have carried information that, in law and in fact, the money paid became at once the money of Dean, the owner, and not the money of the defendant, and from this circumstance it would have been charged with knowledge that, if it wished for any reason to follow the fund and recover the identical money paid, or its equivalent, it must give notice to the defendant before the money was paid to the principal, which it did not do.

The court found that the fact of agency was not known to the plaintiff. The prevailing opinion holds that this finding is not sustained by the evidence. I am of the opinion that in so deciding this court has invaded the province of the trial court. Possession of a check, like the possession of any other article of personal property, raises a presumption of ownership in the possessor, which it would take evidence to remove. The question whether the evidence in this case was sufficient to overcome this presumption depends on the inferences which might be drawn from circumstances which would justify either of two inconsistent conclusions. In such cases the conclusion of the trial court is final. (*Gould* v. *Eaton*, 111 Cal. 639.[1]) That the decision of a trial court upon this fact is conclusive was directly decided in *National Park Bank* v. *Seaboard Bank*, 114 N. Y. 34.[2] So, also, the rule would be different if, after paying the money on the check, the delay in discovering the forgery had been due to the negligence of the plaintiff, and in the mean time the defendant had paid the money over to the principal, or otherwise so changed its position that it would be prejudiced by the plaintiff's recovery. But here the money was paid to Dean on the following day, and it is not claimed than any ordinary diligence by the plaintiff would have enabled it to discover the forgery in time to have prevented such payment.

One who presents for payment a check upon a bank, by the mere act of presentation, even if no word be spoken, represents that the check so presented is all that on its face it purports to be. The defendant, therefore, did make a false representation to the plaintiff of a material fact, although it was ignorant of the falsity of the tacit statement. The plaintiff was bound to know the state of its account with the drawer of the check, and the genuineness of the drawer's signature, but it was charged with no duty to detect the forged alteration in the amount. If there was a duty resting on either party to look to that point, it was greater upon the defendant, who dealt with the forger, than upon the plaintiff, who knew nothing of him. The plaintiff, upon its innocent mistake in assuming that the false check was genuine, and its reliance upon the implied representation of the defendant, which re-

[1] 52 Am. St. Rep. 201.    [2] 11 Am. St. Rep. 612.

liance, in the absence of anything shown to the contrary, will
be presumed, paid to the defendant the full amount of the
check. For the money paid it received no consideration. The
case of the plaintiff rests upon the principle that one who
pays money without consideration, and upon a mistake of a
material fact, may recover it in an action against the person
who received it. The demand for payment was in effect a
rescission. Nothing of value was received, and nothing need
be returned. The defendant at once became liable for the
money demanded. (2 Daniel on Negotiable Instruments, sec.
1661, and cases cited; *Redington* v. *Woods*, 45 Cal. 406, 428.[1])
There is nothing in the later provisions of the Civil Code
above referred to which in the least changes or affects the rule
laid down in the case last cited.

I am of the opinion that the judgment should be affirmed.

Rehearing denied.