[L. A. No. 3211. Department Two.—March 28, 1914.]

NATIONAL BANK OF CALIFORNIA (a Corporation), Respondent, v. C. B. MINER et al., Defendants; THE FIRST NATIONAL BANK OF LOS ANGELES, Defendant, Cross-complainant and Appellant.

BANKS AND BANKING—ISSUANCE OF CASHIER'S CHECK BY MISTAKE—RIGHTS OF PARTIES.—Where one having a commercial account with. a bank deposits. therein his check drawn upon another bank, and the latter bank, laboring under the mistaken belief that he is one of its depositors, issues its cashier's check to the first bank in payment of such individual check, the bank making the mistake is not precluded from availing itself of the error because the mistake was not known and shared in by the other bank, nor because such other

bank, before receiving notice of the mistake, credited the amount of the cashier's check on an overdue note which it held against the depositor.

ID—PAYMENT BY MISTAKE—RIGHT TO RECOVER MONEY.—Money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund.

. APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Flint, Gray & Barker, for Appellant.

Oscar A. Trippet, for Respondent.

HENSHAW, J.—This action was brought by the plaintiff to foreclose its pledge of certain securities, collateral obligations of the defendant Miner, who was a depositor, client, and debtor of the plaintiff bank. As affecting the First National Bank of Los Angeles, defendant, cross-complainant and appellant herein, the plaintiff sought to recover $2,970 upon a cashier's check drawn by defendant bank in favor of the plaintiff. The defense of the defendant bank was of nonliability growing out of lack of consideration and of a mistake noninjurious to the plaintiff, which, therefore, appellant was entitled to rectify. The facts, in brief, are these: Miner had a commercial deposit in plaintiff's bank and likewise owed it money upon an overdue promissory note. Upon a certain day he presented to the plaintiff bank for deposit to the credit of his account the check of one A. R. Johnson drawn in favor of himself upon appellant bank. A conditional credit was given by respondent bank and the check was presented by the messenger of respondent bank to appellant bank for payment. The appellant bank's paying department is divided amongst a number of tellers and corresponding bookkeepers. The depositors are numbered alphabetically and a certain number of them so arranged are assigned to teller one, another alphabetical arrangement to teller two, and so on, there being eight such divisions. In practice when such a check is

presented for payment it is referred to the teller of the proper department who "O K's" it by a teller's stamp, which O K imports the declaration that the check is good, that the drawer is a depositor and has in the bank funds sufficient to meet it. With this teller's O K it is passed on to the draft teller, who in turn prepares the bank's check or draft and presents it to the cashier or assistant cashier for execution. In this case it appears that the check bore a stamp very similar to the O K stamp of paying teller No. 3. Coming into the hands of the draft teller he was misled into believing that the stamp which it bore was the stamp of his bank's own proper teller and so prepared the check executed by the assistant cashier to the respondent bank in payment of Johnson's check and it was delivered to the respondent bank. Within an hour the error and mistake were discovered. Johnson was not a depositor in the bank and had no funds therein. The respondent bank was immediately notified and the Johnson check was tendered to it with a demand for the return of appellant's check. The tender and demand were refused. The appellant bank, in turn, refused to pay the check issued under these circumstances and this litigation followed.

These are the uncontroverted evidentiary facts, though the findings of fact are in some respects puzzling and confusing. Those findings are as follows:

"That the cashier's check issued by the defendant First National Bank to the plaintiff was issued in payment of the check of said A. R. Johnson. That the said cashier's check issued by the First National Bank was not executed by mistake of said First National Bank, nor upon the erroneous supposition that said A. R. Johnson then and there was a depositor in said bank and had to his credit the sum of $2,970. That said A. R. Johnson was not then and there a depositor of said defendant First National Bank and did not then and there have any account whatever with said defendant, and had no money whatever to his credit with said defendant; that said cashier's check of the First National Bank was given to plaintiff pursuant to a supposition of the officers of said bank that said A. R. Johnson had a deposit with said bank; that after said cashier's check was so given by said First National Bank to plaintiff, on the same day, said First National Bank discovered its said error and notified plaintiff that said A. R.

Johnson had no account with the said First National Bank, either at the time of the presentation of said check or thereafter, and had no moneys whatever to his credit in the bank of said defendant, and notified plaintiff that said cashier's check had been issued by and through an error and without any consideration whatever; that the said cashier's check was still in the possession of the plaintiff when defendant so notified plaintiff; that the plaintiff did part with value and gave a consideration for said check of said A. R. Johnson and for said cashier's check so issued to the plaintiff by said defendant; that after the receipt of said cashier's check plaintiff gave to one Miner, the defendant herein, credit for the amount of said cashier's check in the account of said defendant Miner and credited the amount of said cashier's check of $2,970 upon the promissory note of the said defendant Miner.''

It is not easy to reconcile a finding that the appellant's check was not executed by a mistake on its part, nor upon the erroneous supposition that Johnson was a depositor in the bank with a credit to his account sufficient to pay the check, with the next declaration that Johnson was not a depositor, had no money whatever to his credit in the bank and that the bank's check "was given to plaintiff pursuant to a supposition of the officers of such bank that said A. R. Johnson had a deposit with said bank." It would appear that the court finds that the check was not issued upon an erroneous supposition of the existence of certain facts while immediately thereafter it finds the check was issued "pursuant to a supposition" of the existence of material facts which did not in truth exist. If reconcilable at all these findings can only be reconciled upon the theory that the contention here stoutly urged by respondent was that adopted by the court,—namely, that there was no mistake because there was a lack of mutuality of mistake, or, in other words, that the appellant could not avail itself of its mistake because the mistake was not known to and shared by the respondent bank. But this, of course, is not the law applicable to a consideration such as this. (*Moore* v. *Copp*, 119 Cal. 429, [51 Pac. 630]; *Palace Hardware Co.* v. *Smith*, 134 Cal. 381, [66 Pac. 474]; *Hartwig* v. *Clark*, 138 Cal. 668, [72 Pac. 149].) We need not be at pains to follow respondent's counsel through the dictionaries to arrive at the meaning of the word "supposition" as used

in the finding, nor after that, to follow his argument that
the appellant bank had no right to "suppose" anything, and
that the finding implies that it might have "supposed" he was
a depositor, though of a trifling sum, and that there is no find-
ing that any officer "supposed" he had money enough to pay
the check.   The manifest fact is that "supposition" is used
as the equivalent of belief.   We take it that no man reasoning
sanely can, under the evidence and under these findings, say
that the court meant other than to declare that the check was
in fact issued under the belief of the officers of the bank that
Johnson had a deposit with it sufficient to justify and demand
the issuance of the check.   Nor do we think there is any need
of following respondent's argument to the effect that there is
no evidence that the bank would not have paid this check re-
gardless of whether Johnson was a depositor or not and that
there is no evidence to show what the belief of the officers
dealing with this check was.   The findings, as well as the evi-
dence, show so plainly the nature of the mistake under which
the check was issued, the notification to the respondent bank
that it had been issued "through an error and without any
consideration whatever" that it would be but a useless bur-
dening of this opinion to discuss such propositions.

Since the judgment cannot be supported for lack of mutu-
ality of mistake, but one proposition remains, and the conflict-
ing views of counsel upon it may be thus stated.   Respondent
asserts, in effect, that by virtue of the execution and delivery
of this check the liability of the appellant bank became abso-
lute, that by this act it foreclosed itself from any right to
repudiate its obligation, and, that following the issuance of
the check respondent bank changed its condition and parted
with value upon the faith of the assurance of the check of
the appellant bank.   To the first proposition little need be
said.   Extracts are taken from cases which, within their facts,
are perfectly sound to the effect that, generally speaking, the
certification of a check, or a cashier's check, imports absolute
verity.   But these cases are, one and all, in connection with
facts where the certificate or check has been issued without
mistake and certain underlying equities are sought to be ad-
vanced in opposition to its payment, or, they are cases where
by virtue of a change in the condition of the holder of the
check it would be inequitable to allow the bank either to re-

pudiate it or to advance defenses against it. Generally speaking, one and all rest upon the application of the familiar maxim of equity that where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer. (Civ. Code, sec. 3543.)

The rule governing such transactions received extended consideration in *Crocker-Woolworth Bank* v. *Nevada Bank,* 139 Cal. 564, [96 Am. St. Rep. 169, 63 L. R. A. 245, 73 Pac. 456]. There, amongst other quotations and citations of authority, the following language from the *National Bank of Commerce* v. *National Mechanics Association,* 55 N. Y. 213, [14 Am. Rep. 232], is repeated: "It is now settled, both in England and in this state, that money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund." And the matter is summed up by this court in the following language: "An examination of the cases will show that in all well considered adjudications recognition, tacit or express, is given to these principles. Their ultimate analysis amounts to this: That plaintiff, even if negligent, may recover if his act has not changed the position of an innocent defendant to his detriment." In consideration then of the one important question in the case,—namely, whether as found by the court the respondent did give a consideration and part with value after its reception of appellant's check it may be said before reaching it, that the finding that "it is not true that the check of said A. R. Johnson at the time of the presentation thereof to the First National Bank for payment was wholly valueless" is in direct opposition to the other findings made by the court unless it be construed to be a finding that it was not wholly valueless because it was of value to the respondent in maintaining its unwarranted claim. If not absolutely a fictitious check it was a check drawn without warrant of law or fact upon a bank where the drawer had no account whatsoever and no arrangement for its payment. The drawer's act under these circumstances was criminal (Pen. Code, sec. 476a), and it is, indeed, hard to conceive that the court could have meant that the check had any value to the unfortunate payee misled into honoring it.

Coming thus to the principal point in the case,—namely that the respondent bank gave value and consideration after its receipt of appellant's check such as would make it inequitable to permit appellant bank to refuse payment, what the respondent bank actually did in this connection, and all that it did, after the receipt of the check and within the hour before its notification of the mistake, was to credit the amount of the check upon the overdue note of Miner which it held. It was but the exercise by the respondent bank of its right of application of the funds of a depositor who was at the same time its debtor. But even this was not an absolute and complete transaction in the sense that there was any statement and account settled between respondent bank and Miner. It was the mere bookkeeper's stroke of pen whereby Miner's commercial account was lessened by the transfer of a credit upon his promissory note. It was not even regarded by the respondent bank as a perfected and completed transaction, for in pleading this very transfer respondent alleged that the "credit was only apparent, and not real, in that the said credit contained at said time, the said check drawn on the First National Bank, aforesaid, for the sum of $2,970." As an analysis of the pleading this can only mean that if respondent could hold the appellant bank to the payment of its check it was a real credit, but if it could not, it was but an apparent credit. But aside from this and assuming that the changes upon the books of the respondent bank in the matter of Miner's account were made in perfect good faith and in the due course of business, the fact still remains that the respondent bank had not, upon the reception of the appellant bank's check and its bookkeeping transfers thereafter, changed its condition to its detriment in any legal sense which would justify its enforced collection of the check of the appellant bank. The entries which it thus made were all subject to its control and could be changed without injury or detriment to it to comport and comply with the truth. Its reception of the Miner check justified it in giving, as doubtless it did give, but a tentative credit on its books to Miner (*National Gold Bank* v. *McDonald,* 51 Cal. 64, [21 Am. Rep. 697] ; *Steinhart* v. *National Bank,* 94 Cal. 362, [28 Am. St. Rep. 132, 29 Pac. 717]), but because of its reception of appellant's check it parted with no value and changed its condition only by a

stroke of its bookkeeper's pen which another stroke could rectify. The defense of lack of consideration, therefore, was fully open to the appellant bank. (*Thompson* v. *Sioux Falls Nat. Bank,* 150 U. S. 231, [37 L. Ed. 1063, 14 Sup. Ct. Rep. 94]; *Mann* v. *National Bank,* 30 Kan. 412, [1 Pac. 579]; *Merchants' Bank* v. *Marine Bank,* 3 Gill (Md.), 96, [43 Am. Dec. 300]; *Central Nat. Bank* v. *Valentine,* 18 Hun (N. Y.), 417.) That defense is abundantly established.

The judgment and order appealed from are therefore reversed.

Melvin, J., and Lorigan, J., concurred.