[Civ. No. 17127.   First Dist., Div. One.   Feb. 15, 1957.]

JAMES E. DOYLE, Appellant, v. EARL MATHERON
et al., Respondents.

522

Thomas F. McBride for Appellant.

John L. Garaventa for Respondents.

PETERS, P. J.—Appellant Doyle had a contract with the federal government to haul certain government freight. Doyle did not have the trucking facilities to carry all of the freight involved. Doyle entered into an agreement with Matheron to the effect that Matheron would subhaul some of the freight in return for a percentage of the amount received by Doyle from the federal government. Admittedly, Doyle kept the books, computed the rates, and billed the government for the services rendered. Doyle then remitted to Matheron the agreed upon percentages that he was to receive. This arrangement between Doyle and Matheron continued for approximately three years, and was then terminated, the percentages received by Matheron varying as the arrangement between them was from time to time modified. After the Doyle-Matheron contract had been terminated, a government audit showed that Doyle had overcharged the government. Doyle paid back to the government the amount of these overcharges. Admittedly, Doyle was negligent in billing the government, and such overcharges were proximately caused by Doyle's negligence. Many months after repaying the government, Doyle brought this action to recover from Matheron the sum of $3,821.27, being the proportion of the overcharge that Doyle claimed that he overpaid to Matheron. Matheron denied liability, and cross-complained for certain moneys claimed owing to him by Doyle. The trial court gave judgment in favor of Matheron on both the complaint and cross-complaint. Doyle appeals only from the adverse judgment on his complaint.

The rule of law applicable to the problem here involved is not in dispute. ▪▪ Both parties agree that the following statement of the law in *National Bank of Calif.* v. *Miner,* 167 Cal. 532, 537 [140 P. 27], is correct:

"The rule governing such transactions received extended consideration in *Crocker-Woolworth Nat. Bank* v. *Nevada Bank,* 139 Cal. 564 [73 P. 456, 96 Am.St.Rep. 169, 63 L.R.A. 245]. . . . There, amongst other quotations and citations of authority, the following language from the *National Bank of Commerce* v. *National Mechanics Assn.,* 55 N.Y. 213 [14 Am.Rep. 232], . . . is repeated: 'It is now settled, both in England and in this state, that money paid under a mistake of fact may be recovered back, however negligent the party

paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund.' ''

██ In the present case the trial court found: ''That the said defendants . . ., by reason of the facts hereinbefore set forth, were caused to and did so substantially change their position that it would now be unjust, unfair and inequitable to compel the said defendants . . . to refund the said alleged overcharges to the said plaintiff . . .''

Although several other points are argued by counsel, the basic question involved is whether the quoted finding is supported by the evidence. If so, the judgment must be affirmed.

The evidence most favorable to respondent shows that Matheron had no contract with Doyle for any fixed period. Matheron could have quit at any time. He relied upon Doyle to do the rating for the jobs and the billing of the government, and to pay him his percentage. In fact, Matheron did not know how the bills were computed. Several times during the three-year period involved he told Doyle that he could not operate profitably at the percentages he was receiving, and these percentages were modified to his advantage by agreement of the parties. It is a reasonable inference that unless he received substantially what he did receive he would have terminated the arrangement, and that he continued to carry goods for Doyle not in reliance upon the percentages, but in reliance upon the amounts he was actually receiving. These amounts, of course, were computed by Doyle. Matheron also testified that, during the three-year period he worked for Doyle, he purchased some expensive equipment in order to be able to handle the government hauling in an adequate manner. Included within this equipment was a Diesel tractor for $13,000, another tractor for $7,100, and a truck and trailer. During the period he was subhauling for Doyle he bought $27,700 worth of new equipment. He terminated his arrangement with Doyle in June of 1952, and, at the time of trial (November, 1954), he was using this equipment in his then business. In November, 1954, he owned this equipment free and clear of all liens, but when he purchased the new equipment he encumbered it in order to make the purchases. In order to make the payments on this equipment he was forced to sell another business in which he was engaged, and a material portion of the encumbrance was paid off from income other than that which was received from the Doyle

business. Matheron would not have bought the new equipment had it not been for the Doyle business, because his old equipment was adequate to handle the hauling he was doing before he started to subhaul for Doyle.

It should also be mentioned that when Doyle was informed that he had negligently overcharged the government and the government made its claim for a return of some of the moneys, he did not inform Matheron, nor ask Matheron to assist in the negotiations with the government. He alone carried on these negotiations. It was not until 15 months after he learned of the overcharges that he first informed Matheron and made the claim against him.

Reference could be made to other relevant evidence, but enough has been set forth to demonstrate that the finding that Matheron "substantially" changed his position in reliance on the total payments received by him, that it would be "unjust, unfair and inequitable" to compel him to now refund the claimed overcharges, is amply supported by the record. Since the existence or nonexistence of an estoppel is a question of fact (*Pacific Gas etc. Co.* v. *State Board of Equalization*, 134 Cal.App.2d 149 [285 P.2d 305]), this holding is determinative of all the issues involved on this appeal. The other errors urged by Doyle are not material and need not be discussed, nor need we discuss the other points raised by Matheron in support of the judgment.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.