[Civ. No. 27961.   Second Dist., Div. Four.   Apr. 26, 1965.]

AMERICAN OIL SERVICE, INC., Plaintiff and Respondent, v. HOPE OIL COMPANY et al., Defendants and Appellants.

Brown & Grisham and Roy J. Brown for Defendants and Appellants.

Allen & Wilson and Richard G. Wilson for Plaintiff and Respondent.

JEFFERSON, J.—This appeal is taken from the judgment rendered in the second trial of an action seeking declaratory relief with respect to a written agreement providing, for the sale to plaintiff, American Oil Service, by defendants, Hope Oil Company and May and Richards, of a one-half interest in three oil well servicing rigs.

In the first trial, the court entered findings that plaintiff was entitled to a half interest in the equipment but was not entitled to reimbursement for overpayments made by it, the court finding that such payments were voluntarily made. Plaintiff appealed, the judgment was reversed (*American Oil Service* v. *Hope Oil Co.*, 194 Cal.App.2d 581 [15 Cal.Rptr. 209]) on the ground that the evidence was insufficient to justify a finding that plaintiff had such knowledge of the facts as would have rendered the payments voluntary, and a retrial was ordered. The doctrine, ''the law of the case,'' is not applicable to the questions decided therein because such determinations related to the sufficiency of evidence presented on questions of fact where the sufficiency depended upon the credibility of witnesses. The doctrine of the law of the case does not foreclose redetermination of such questions. (*Wallace* v. *Sisson*, 114 Cal. 42 [45 P. 1000]; 3 Witkin, Cal. Procedure (1954) § 213, pp. 2424-2426, citing cases.) However, as we point out below, the decision at the first trial, and the implication of the opinion on the first appeal, are not without significance on the present appeal.

A résumé of the evidence is as follows: Plaintiff is engaged in the business of servicing oil wells. For a number of years prior to March 1952, under an oral agreement, defendants had furnished, on a rental basis, the oil well servicing rigs plaintiff used in its business. As rent for the use of the rigs plaintiff paid defendants one-half of the earnings of the rigs (the consideration plaintiff charged its customers, which was separate from the charges for the labor it furnished)

and defendants, at their sole expense, kept the equipment in repair and paid all taxes and insurance costs thereon.

After numerous drafts were prepared by one John Mixon, an employee of defendants, and rejected by plaintiff, the parties entered into a written agreement in December 1953, the terms of which were made retroactive to March 1, 1952.

The portions of the new contract pertinent to this appeal are as follows:

"The Party of the First Part [plaintiff] agrees to pay to the Parties of the Second Part [defendants] one-half of all gross money earned for all work done [by the equipment herein involved]. . . .

"Party of the First Part agrees to pay one-half of the repair expenses on the beforementioned equipment and Party of the First Part agrees to operate the equipment as carefully as humanly possible. Party of the First Part shall have the duty of seeing that proper repairs are made.

" .  .  .  .  .  .  .  .  .  .  .  .

"When Party of the First Part has paid to the Parties of the Second Part one-half of the repair, together with $2,000.00 per year for insurance and $3,000.00 per year paid [*sic*] the Parties of the Second Part for services rendered by their officers and employees in over-seeing their interests in the above equipment and $130,000.00, Parties of the Second Part agree to deliver to the Party of the First Part a one-half interest in the equipment listed."

In the performance of the new agreement plaintiff saw that the necessary repairs were made. Plaintiff was billed and paid for such repairs and then accounted to defendants for the cost thereof. Defendants then remitted to plaintiff one-half of such cost. In addition to the billings showing the gross amount it had expended for repairs, each month plaintiff sent defendants a statement setting forth the earnings of the rigs and the total amount due defendants as its share. A check for such amount accompanied the statement. Neither the monthly statements nor plaintiff's remittance checks accompanying them set forth anything regarding the purchase price of the half interest in the rigs, and, prior to the present dispute, there was no communication or discussion as to the balance due on the purchase price. It appears that neither party kept a ledger account which clearly reflected this information.

The first dispute between the parties arose in July or August 1958, when plaintiff's president and sole stockholder,

Mr. Van Hooser, stated to Mr. Richards, one of defendants, that the contract was but $2,600 away from fulfillment and that he wished to pay this amount and thereby become the owner of a one-half interest in the rigs. Mr. Richards disagreed, contending that approximately $45,000 remained to be paid on the contract. Subsequently, however, upon examination of its books, plaintiff determined that it had fulfilled its obligations under the agreement nearly 13 months earlier, in May 1957.

Mr. Van Hooser and plaintiff's bookkeeper both testified that they failed to discover that the contract had been fulfilled because of an oversight on the bookkeeper's part, which oversight was caused by a split accounting system adopted by plaintiff at the request of defendant Richards; that, after the written agreement was signed, defendant Richards had requested plaintiff, for income tax purposes, to set up its books in such a way that they showed one-half of the payments being made towards payment on the equipment and the other one-half "as use of the equipment and to add to the amount due on the principal," $5,000 a year (for insurance and supervision). In Richards' testimony he denied making such a request.

In bringing this action for declaratory relief, plaintiff contended that it had fulfilled its obligations under the contract on May 31, 1957, and was entitled to a one-half interest in the oil well servicing rigs at that time, and, further, that it was entitled to a refund of overpayments amounting to $31,588.13 made to defendants between June 1, 1957, and August 31, 1958, because such payments were made under a mistake of fact. Defendants, on the other hand, contended that, before plaintiff was entitled to a one-half interest in the rigs, it was obligated, under the proper construction of the contract, to pay for all repairs, rather than one-half, and that on August 31, 1958, $30,037.94 remained due. Defendants further maintained that, if the trial court adopted plaintiff's construction of the contract, defendants were still entitled to keep the overpayments, because the mistake urged by plaintiff was a mistake of law and not of fact; even if the mistake was one of fact that plaintiff cannot recover because of a detrimental change of position by defendants; and finally, that defendants were entitled to the overpayments as tenants in common of the rigs. The parties stipulated in the pretrial conference order that, if defendants were not entitled to the payments after May 31, 1957, the overpayment would be in the amount of $31,588.13.

The trial court, in awarding judgment for plaintiff, found that, under the terms of the contract, plaintiff was required to pay but one-half of the repair expenses, and that plaintiff had completely performed its part of the contract as of May 31, 1957, and, on said date, became entitled to a one-half interest in the equipment described therein. The court further found that plaintiff did, due to a mistake of fact, continue to make payments as provided for in the contract and that the amount of the overpayments was in the sum of $31,588.13. Such amount, the court found, was subject however, to an equitable setoff in the sum of $18,966.77, which was found to be the reasonable value of the use by the plaintiff of defendants' one-half interest in the equipment from June 1, 1957, through August 31, 1958; and, in the sum of $902.50, which the court found represented one-half of the taxes and licenses paid by defendants during the same .period. The net amount recoverable was found to be $11,711.86 with interest at the rate of 7 per cent per annum.

I.

Defendants contend that the trial court erroneously interpreted the provisions of the contract establishing the formula for determining the purchase price for the one-half interest in the equipment, "in that the court excluded from the purchase price the one-half of the repair expense paid by defendants." Defendants, in effect, maintain that, notwithstanding the fact that they had reimbursed plaintiff for one-half of the repair expenses paid by plaintiff, they were entitled to the return of this amount and that plaintiff would not become entitled to its half interest until they had been reimbursed for all the repair expenses. To support this argument, defendants direct our attention to the clause in the contract which reads, "When the Party of the First part [plaintiff] has paid to the Parties of the Second part [defendants] one half of the repair, ... Parties of the Second Part agree to deliver ... a one-half interest in the equipment listed." Defendants argue that plaintiff has not paid "to the Parties of the Second part one-half of the repair," that in actuality plaintiff has never paid any repair expenses *to defendants*.

There is no dispute that, as a matter of procedure in the performance of the contract, plaintiff paid the persons who repaired the equipment and then was reimbursed one-half by defendants. Plaintiff thus did not literally, as the contract stated, pay its one-half of the repair *to defendants*.

As an aid in discovering the true intent of the parties to the contract, the trial court permitted parol evidence from each side concerning the circumstances surrounding the making of the contract. Mr. Van Hooser testified as follows concerning his conversation with Mr. Richards during the negotiations leading up to the drafting of the contract: "I made an appointment to go down to his house, and I went down there and I met him. My son was with me and we went down there and talked it over, what the deal would be, and we came to this agreement: That they would own the rigs, and when he had taken out of the income—when I paid him $130,000 by paying him one-half of the income of the rigs, then half of the equipment would be mine. I will never forget him saying that. He said, 'You now own a half-interest in the Gin Pole.' One-half of the rig was supposed to belong to the American Oil Service when he had received that much money. He was to pay one-half of the repair bills and I was to pay the other half and all the repair bills was [sic] billed to the American Oil Service and in return he paid me back half of it by sending me a check."

Mr. Richards' testimony on this subject was as follows: "When we [defendants] received out of our one-half of the returns that [sic] Mr. Van Hooser received from the rental of the equipment, when we received sufficient to pay for the costs set up together with all of our expenses of every nature, when we received that amount, he was to have the one-half interest in the equipment. ... The substance of that agreement was that we were to receive in addition to $130,000—that amount was not fixed at that time, but whatever the cost setup was—we were to receive that together with all of the expenses of every nature that we incurred, to come out of our one-half of the return that Mr. Van Hooser received from the oil companies."

We sustain the finding of the trial court that Mr. Van Hooser's testimony was more consistent with the language of the contract and with the parties' own contemporaneous construction thereof, and, therefore, sustain the interpretation of the contract in favor of the plaintiff.

It is a well settled rule that a construction of a legal instrument, based on extrinsic evidence, should be followed by an appellate court, if that interpretation is reasonable. (1 Witkin, Summary of Cal. Law (1960) 7th ed., p. 246, and cases there cited.) In this case, two trial courts have agreed that the contract should be interpreted in accordance with the

contention of the plaintiff; and the decision on the first appeal, although, as we have said, not the law of the case, still accepted that interpretation as being reasonable.

In addition to the testimony of Mr. Van Hooser (which the trial court was free to accept over that of Mr. Richards), several factors support the reasonableness of the interpretation adopted by the lower court:

(1) If plaintiff was, in the end and as a condition precedent to acquiring a one-half interest in the equipment, to pay all of the repair charges, it was a curious circumambulation for defendants to have reimbursed plaintiff for one-half of these repairs as they were made. In discussing the provision of the contract dealing with the payment of supervisory expenses, defendant Richards testified that he had insisted, during the performance of the contract, that defendants' share of the expenses for supervision be deducted by plaintiff before plaintiff made its monthly payment of defendants' one-half share of the earnings of the equipment, instead of requiring defendants to remit separately their share of such expenses. Richards testified that he objected to the latter procedure "because there was no sense in adding something to have me pay it back later."

(2) While the contract is specific that plaintiff was to "have the duty of *seeing* that proper repairs were made," the only contractual provision in that paragraph of the contract relating *to payment* (as distinguished from "seeing to"—i.e., ordering) is that plaintiff agrees to pay to defendants one-half of such cost. It would have been consistent with the literal contractual provisions for plaintiff, acting under the authority conferred, to have ordered repairs on the credit of defendants, to be billed by the repairmen directly to defendants, with plaintiff thereafter reimbursing defendants for one-half of the bills so sent to defendants and paid by them. That the parties, in practice, did not follow this procedure does not mean that they could not; or that they did not contemplate such a procedure as possible. Had this procedure been followed in practice, the language of the next paragraph (herein relied on by defendants), would merely have implemented the earlier clause stating that plaintiff was to bear one-half of the repair costs and pay *that* share before it would be the owner of a one-half interest in the equipment.

(3) Until plaintiff completed its full payment of the $130,000 purchase price, the equipment belonged to defendants. It could have been subject to liens by repairmen if their bills

were not paid. Had this occurred, defendants would have been forced to pay the bills, in full, in order to protect their property. Again, the clause relied on by defendants was consistent with a legitimate protection against such an event.

(4) The contract reached its final form in December 1953; but it was retroactive to March of 1952. Under the agreement that it superseded, defendants had paid all of the repair charges. If any of those charges remained unadjusted in December, the provision in question, again, protected defendants and insured that the retroactivity would be fully accomplished.

We do not hold that the factors just discussed necessarily compelled a construction in favor of plaintiff. We recite them merely to show that the construction adopted by the trial court was not an unreasonable one. Since the trial court was reasonable in its interpretation, we are bound by its decision.

## II.

Defendants next contend that the finding of the lower court that plaintiff overpaid the purchase price as the result of a mistake of fact is not supported by the evidence. It is defendants' position that, if any mistake was made, it was a mistake of law. ■ "A mistake of law occurs where a person is truly acquainted with the existence or nonexistence of facts, but is ignorant of, or comes to an erroneous conclusion as to, their legal effect.... ■ A payment made by reason of a wrong construction of the terms of a contract is made under a mistake of law." (70 C.J.S., Payment, § 156c, p. 366.) It is clear that money voluntarily paid with full knowledge of all the facts cannot be recovered back by the payor. (*Western etc. Oil Co.* v. *Title Ins. & Trust Co.,* 92 Cal.App.2d 257, 266 [206 P.2d 643]; *Texas Co.* v. *Todd,* 19 Cal.App.2d 174, 187-189 [64 P.2d 1180].) ■ But money paid under the mistake of fact may be recovered back, however negligent the payor may have been in making the mistake, unless payment has caused such a change in the position of the payee that it would be unjust to require him to refund the payments made. (*National Bank of California* v. *Miner,* 167 Cal. 532 [140 P. 27]; *Doyle* v. *Matheron,* 148 Cal.App.2d 521 [306 P.2d 913].) ■ Overpayments caused by clerical or accounting errors and oversights have been treated as overpayments made under a mistake of fact. (*National Bank of California* v. *Miner, supra,* 167 Cal. 532; *Doyle* v. *Matheron, supra,* 148 Cal.App.2d 521; *Dunham* v. *McDonald,* 34 Cal.App. 744 [168 P. 1063]; *Burckard* v. *Smith,* 80 Cal.App. 104 [251 P. 663].)

■ The uncontradicted evidence presented at the trial

establishes that the overpayments by plaintiff from June 1, 1957, through August 30, 1958, were made under a mistake of fact in the nature of an oversight on the part of plaintiff's accountant. The evidence, in the form of the testimony of Van Hooser and plaintiff's accountant, M. T. Pihlstrom, and the statement prepared by Pihlstrom showing $2,625.13 owing as of June 30, 1958 (defendants' Exhibit A), shows that plaintiff's books were set up so that one-half of the money paid to defendants was attributed to "rental expense" and the other half to capital expenditure. (Pihlstrom testified that defendant Richards had requested that the books be set up in such manner. Richards, in his testimony, denied this, but there was no dispute as to the fact the books were in fact so arranged.) In this split system of bookkeeping, the contract price of $130,000 was split and one-half thereof—$65,000— was set up on the books as the purchase price. The mistake occurred when Pihlstrom failed to split the $5,000 per year for insurance and supervision which was added to the purchase price each year. With the erroneous addition of $5,000 a year rather than $2,500, plaintiff's books on June 30, 1958, erroneously showed that $2,635.13 remained to be paid.

III.

Defendants maintain that, even if the payments were made under a mistake of fact, (1) plaintiff should be estopped to assert it because defendants altered their position to their detriment by reason of the overpayments they received; (2) it was error for the court to fix the amount of recovery at a sum far greater than the evidence established as reasonable; and (3) the court erroneously failed to find that the gross earnings from the equipment, as of the time the plaintiff had paid for its one-half interest, were in the nature of rental income which, under the laws of cotenancy, defendants were entitled to keep.

The first of these points involves merely an argument as to the weight of the evidence, and as to inferences to be drawn from the evidence—matters on which the trial court's findings adverse to defendants are binding here. For reasons set out below, we conclude that the third point is without merit, but that, as contended in the second point, a modification of the monetary award is required.

In determining the amount of money to be awarded to plaintiff in this case, it should be observed that what the court was required to do was to make an equitable adjustment

for a situation which arose because of a mutual mistake. Because of this mistake, plaintiff paid defendants $31,588.13 which it was not required to pay under the contract. By reason of the same mistake, plaintiff had the use of the machinery for 15 months. During this period plaintiff was a half-owner of the machinery. When the court assists plaintiff to correct the mistake and recover back what it paid, the court must also require plaintiff to do equity by paying for what plaintiff received by mistake. Plaintiff attempts to escape this equitable adjustment by reliance upon the rule that one cotenant of real property cannot, in the absence of agreement, recover rent from the other cotenant. (See *Nevarov* v. *Nevarov,* 117 Cal.App.2d 581, 585 [256 P.2d 330].) But this is not the ordinary case of a party who knowingly permits his cotenant to use the common property. In our case plaintiff is asking the court to relieve it of the consequences of a mistake. The mistake was mutual and each party received something the other would not have given if the facts had been known. The court should not relieve the plaintiff without also relieving defendants of the consequences of the same mistake.

There is no scientific or mathematically precise formula for measuring the value of the use of defendants' half-interest in this indivisible property during the 15-month period from June 1, 1957, through August 31, 1958. The contract under which the parties dealt prior to June 1, 1957, is some indication of value, but it does not provide an exact standard because the payments made by plaintiff to defendants under the contract included the purchase of an ownership interest as well as compensation for use.

Under the contract, defendants, as full owners of the machinery, received one-half of the gross rentals and paid one-half of the repairs. Plaintiff also paid defendants the agreed sum of $416.66 per month to reimburse them for insurance and supervision. The written agreement was silent as to taxes.

The trial court allowed defendants to offset (i.e., retain) for the use of their one-half interest, $18,966.77 (which is one-fourth of the gross rentals) plus $902.50, which it found represents one-half of the taxes and licenses paid by defendants.

Defendants protest that this offset is not enough. They point out that they have already paid one-half of the repair expenses for the period in question and that the testimony of plaintiff's president, Van Hooser, supports a greater allowance to them as equitable. The gist of that testimony

was that, in Mr. Van Hooser's opinion, defendants were equitably entitled to one-fourth of the gross earnings, subject to paying one-fourth of the expenses. We accept this concession by plaintiff as the guide for the equitable adjustment which this case requires. In computing the net sum due to plaintiff, we have disregarded the $2,000 per year paid by plaintiff for insurance; it paid this when defendants owned 100 per cent of the equipment, its share could not have been less thereafter. We disregard, also, the $3,000 per year paid toward the salary of defendants' liaison supervisor; there is no basis in the record to show that defendants would or could have had any different expense in supervising a 50 per cent interest than they had in supervising a 100 per cent interest. However, defendants paid 50 per cent of the expenses of a "contact man" (an item added to the contract by oral agreement in 1954); they should have paid only 25 per cent. With the adjustments indicated, the figures are as follows:

| | | |
|---|---|---|
| Overpayment as per stipulation.. | | $31,588.13 |
| Credits by way of offset: | | |
| Overpayment of repairs...... | $ 5,853.13 | |
| Overpayment on contact man. | 1,905.97 | |
| 50 per cent of taxes......... | 902.50 | |
| 25 per cent of gross income.... | 18,967.03 | |
| | $27,628.63 | 27,628.63 |
| Net overpayment ............. | | $ 3,959.50 |

The judgment is modified by deleting the final paragraph thereof, as it appears in lines 11 to 17 inclusive of page 2 thereof, and substituting the following:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that plaintiff have judgment against the defendants HOPE OIL CORPORATION, a corporation, and MAY & RICHARDS, a Joint Venture composed of F. F. RICHARDS, THE ESTATE OF FRANK MAY, deceased, and CHARLES C. MAY or any of them, in the sum of $3,959.50 with interest thereon at the rate of 7% per annum from August 31, 1958, in the amount of $1,316.53—a total sum of $5,276.03 together with costs in the amount of $66.35."

As so modified, the judgment is affirmed; neither party shall recover costs in this court.

Files, P. J., and Kingsley, J., concurred.