[Civ. No. 33087. Second Dist., Div. Two. May 8, 1969.]

FRONTIER REFINING COMPANY, Plaintiff and Appellant, v. HOME BANK, Defendant and Respondent.

Rutan & Tucker, Howard F. Harrison and Rodolfo Monte-jano for Plaintiff and Appellant.

Swerdlow, Glikbarg & Shimer and Allan Albala for Defendant and Respondent.

ROTH, P. J.—This appeal is by The Frontier Refining Company (Frontier) from a summary judgment in favor of Home Bank (Home) rendered in an action brought by Frontier against Home and Jack Ferguson for money had and received. A default had been taken against Ferguson which was being tested by a motion to set it aside. The record does not show the result of this motion.

The undisputed facts show that on December 1, 1955, pursuant to a 10-year written lease in which Frontier was lessee, Jack Ferguson and wife (Ferguson) were one of two lessors, and Don Ferguson and wife were the other, Frontier obligated itself to pay rental, the exact amount of which cannot be ascertained from the lease, but which was apparently in excess of $3,000 per month. The lease provided in paragraph 2 thereof, ''The rent . . . shall be determined according to . . . Option Agreement . . . dated July 10, 1955.'' The option agreement is not part of the record.

In January 1958 Ferguson executed an income assignment addressed to Frontier of ''all income payments . . .'' due to him under the lease to Home ''to continue in full force and effect until you [Frontier] are notified to the contrary by HOME BANK.''

On January 20, 1958, Home transmitted the original assignment together with an additional document to Frontier. The added document is partially printed and is designated "Re: Collection No. 490." It stated that the lease had been ". . . left with us for collection . . ." and in pertinent part recited: "We enclose a Collection Identification Card, which should always accompany your payments to insure proper identification of the collection and credit. Checks should be made payable to this Bank.

"Inasmuch as the card shows the date payments are due, further notices will not be sent. . . ."

Frontier accepted the Assignment Notice and, using the collection number designated in the notice, commenced payments of $1,500 on February 1, 1958, and continued such payments monthly thereafter in the same amount from February 1. 1958 to and including January 1, 1967, frequently identifying such payments "for Jack Ferguson Number 490."

On January 17, 1958, Home made a loan of $21,200 to Ferguson. The loan was to be repaid in 11 monthly installments of $660 each commencing February 12, 1958, and a final payment of $13,940 on or before January 12, 1959. The loan was in fact repaid in full by January 9, 1959.

The record shows without dispute that in addition to the loan made by Home on January 17, 1958, other loans were made from time to time by Home to Ferguson during the period of 1958 to January 7, 1967. None of the loans were ever in default. Frontier made no averment and the record does not show that the lease was used as collateral or ever resorted to as collateral by Home for any of the loans. Nothing appears in the single affidavit filed by Frontier or anywhere else in the record which directs Home to use Frontier remittances as collateral or suggests that Home may at its option use the remittances to pay off any loan which may be outstanding. From the inception of the relationship between Home and Ferguson in each and every case Frontier's payments were deposited to the commercial checking account of Ferguson maintained at Home, except for the deduction of $1 per month service charge. No portion of Frontier payments were ever in fact credited or applied against any outstanding loans to Ferguson.

The lease by its terms expired on Decemebr 1, 1965.

Frontier avers that after December 1, 1965 payments amounting to $21,000 were inadvertently made because of a

mistake in its accounting department, which it did not discover until on or about January 20, 1967.

Home received from Frontier fourteen checks in the sum of $1,500 during the period December 1, 1965 to and including January 3, 1967. These checks less $1.00 collection fee, as all prior checks, were deposited to the commercial account of Ferguson.

On January 20, 1967, Frontier, by letter, advised Home of the overpayment and requested Home for repayment. Home refused to pay and by letter, dated January 23, 1967, said in pertinent part:

"Apparently, Mr. Ferguson had not received a copy of your letter and knew nothing of the action until we called him on the phone this morning. He stated that you were still in possession of the premises and that you had not surrendered them nor had you given him any notice of intention to surrender. . . ."

In addition, Home, referring to at or about the time Frontier's letter of January 20th was received, states in one of the affidavits supporting its motion for summary judgment:

". . . Mr. Ferguson did advise me on that occasion, and he has advised me since . . . that Frontier . . . is indebted to him by reason of its possession of the premises and that no payments were made by mistake but were made because they were due."

The only answer to the averments of possession are a pregnant admission by Frontier that it did continue in possession. In answer to a interrogatory propounded by Home, Frontier states as follows:

"8. The premises described in Interrogatory No. 7, Schedule 1, as 'State Street Property, 1191 South State, Provo, Utah,' were vacated under the Lease described in Interrogatory No. 4 on December 1, 1965. The property was subsequently leased from Don Ferguson commencing December 1, 1965, and is still under lease from Don Ferguson. Property described in Schedule 1 as 'Center Street Property, 1600 West Center Street, Provo, Utah County, Utah' was leased according to the Lease described in Interrogatory No. 4 until July 1, 1965. Station was subsequently leased, commencing July 1, 1965, from Thelma J. Ferguson, and is still under lease. Property described as the 'Riverdale Property, Weber County, Utah' was vacated on June 30, 1965."

No explanation is made of said pregnant admission except Frontier's oral statement in argument.

"Apparently what happened, your Honor, was, the plaintiff remained in possession under a new lease arrangement with certain other persons that were the original lessors. Portions of the premises—this is the lease of three gas station sites—portions of the premises were vacated after that time. . . ."

This argument was never made part of any affidavit.

Frontier filed a single affidavit in opposition to Home's motion for summary judgment. Nothing in the affidavit or in any of the other documents in the record, disputes any of the facts hereinabove outlined.

The one issue of fact raised by Frontier's affidavit is whether the payments it made after December 1, 1965, were made by mistake. On the admitted facts in the record it appears there was no mistake.[1] However, because of the strictness with which the evidence offered by moving parties who obtain summary judgment must be viewed we assume there was a mistake.

*Slobojan* v. *Western Travelers Life Ins. Co.*, 70 Cal.2d 432, 436-437 [74 Cal.Rptr. 895, 450 P.2d 271], reiterates the guidelines for a review of a summary judgment.

█ It is settled that money paid under mistake of fact may be recovered, unless the payment has caused such a change in the position of the party to whom the money was paid that it would be unjust to require him to refund. (*National Bank of Cal.* v. *Miner* (1914) 167 Cal. 532, 537 [140 P. 27]; *Crocker-Woolworth Nat. Bank* v. *Nevada Bank* (1903) 139 Cal. 564, 572 [73 P. 456, 96 Am.St.Rep. 169, 63 L.R.A. 245]; *American Oil Service* v. *Hope Oil Co.* (1965) 233 Cal.App.2d 822, 830 [44 Cal.Rptr. 60].

█ Frontier argues in effect that it paid the money to Home and that Home was a beneficiary of the payments and therefore had a duty to notify Frontier of the lease's expiration and is responsible to it because Home had sent no such notice. The undisputed written evidence shows that Frontier paid, and knew it was paying, the money to Home as a collecting agent for Ferguson and not even remotely for the benefit of Home. There is nothing in the record to suggest that Frontier even knew Home made loans from time to time to Fer-

---

[1]Compare, *Brownson* v. *Roy*, 133 Mich. 617 [95 N.W. 710, 712]; wherein the Supreme Court of Michigan, reviewing an assignment of rents, noted that the written lease had by its terms expired after the assignment, but, nevertheless, held that such assignment was not ineffectual where, as at bench, the tenant [Frontier] had continued to occupy the premises.

guson. It is not disputed that Home was not advised of the mistake until the funds had been irretrievably paid to Ferguson. There is nothing in the record to suggest that Home could, by charging the Ferguson account, recover the payments in question which it had deposited to Ferguson's account. There is nothing in the record to suggest that Home ever used the collections it made from Frontier as collateral for a Ferguson loan. In fact, the record shows that during the period from December 1965 to December 1967, amounts substantially in excess of the collection items were each month deposited to the Ferguson account with Home. There is nothing in the record to suggest Ferguson was ever in default and every suggestion is that at no time prior to 1965 or thereafter did Home have a right to levy a lien on the Ferguson collection or the Ferguson account.

Furthermore, even if it is assumed by inference from the admitted facts that Home could, by banker's lien, collateralize Frontier's payments as security for loans made to Ferguson during the overpayment period, this circumstance could not supply the fact that no Ferguson loan was in default to justify such procedure, nor controvert the fact that Home did change its position when payments so received by Home and properly deposited to Ferguson's account, were subsequently withdrawn by Ferguson. On the record, there is no contradiction of the fact that Home was acting as a conduit for its depositor, Ferguson. It collected funds in this capacity, and in this capacity only, and not for its own benefit. Home had no alternative but to deposit them to the account of Ferguson and, in the absence of any default by Ferguson, Home could not legally do otherwise. In these circumstances, Home cannot be charged for the mistake of Frontier. (See *Crocker-Woolworth Nat. Bank.* v. *Nevada Bank, supra; National Bank of Cal.* v. *Miner, supra; Firestone Tire & Rubber Co.* v. *Central Nat. Bank,* 159 Ohio St. 423 [112 N.E.2d 636] ; *Pennsylvania Mut. Life Ins. Co.* v. *Real Estate-Land Title & Trust Co.,* 116 Pa. Super. 81 [176 A. 747] ; Annot. 40 A.L.R.2d 997, 1009-1011.)

In *Crocker, supra,* Bank A paid $22,000 to Bank B in the mistaken belief that a check drawn on Bank A's account was valid. Bank B paid the $22,000 to its depositor, who had forged the check. The $22,000 was paid before the alleged forgery and mistake were discovered. ▪ The court properly stated the substance of the action as follows (139 Cal. at pp. 570-571) :

"This action, then, as we have said, is one for the recovery of money paid by mistake, and it is of consequence to bear in mind at the outset of this consideration the well-settled principles governing the right of recovery in such cases. The action, even when in form a legal action for money had and received, always addresses itself to the equitable consideration of the court. The governing principle is this: that where equally innocent persons have dealt with one another under a mistake, the burden of loss resulting from the common error ordinarily will be left where the parties themselves have placed it, and so a recovery can only be had where in equity and good conscience the defendant should be called upon to refund. (*Holly* v. *Missionary Society,* 180 U.S. 284 [45 L.Ed. 531, 21 S.Ct. 395].)"

In Restatement, Restitution, section 142, comment b, the rule applicable to the circumstances here, is stated as follows: "If a person who is without fault has received specific . . . chattels, his duty of restitution is limited to the return of such things if he still has them when he learns the facts, in whatever condition they may happen to be. . . . If such things have been lost, transferred, stolen or destroyed without benefit to him, he is under no duty of restitution. . . ."

Frontier claims in its opening brief, for the first time, that there is a triable issue of fact as to whether there has been a breach of the duty of ordinary care imposed by California Commercial Code, section 4202, subdivision (1)(a) imposed on so-called "collecting banks" in presenting a check or sending it for presentment. ▮ In making this contention, Frontier assumes that Home was acting as a "collecting bank" within the definitions of the California Commercial Code. This is incorrect. Home did not receive the checks as a "collecting bank" (Com. Code, § 4105, Uniform Commercial Code Comment 1), but rather as an ordinary payee with instructions from the true beneficiary of the check, Ferguson, to deposit the same to his account.

In any case, the issue of negligence presented by Commercial Code, section 4202, subdivision (1)(a) is not presented by the complaint, and furthermore, there are no facts which in any way suggest that Home was negligent in any way. ▮ The duty of ordinary care imposed on a collecting bank under Commercial Code, section 4202, subdivision (1)(a) does not create a duty of ascertaining whether a given check was issued by mistake. In any event it is clear on all facts before us that Home was not presenting items for payment within the meaning of these sections.

Appellant further suggests that the enactment of Commercial Code, section 4207 has in some way changed the principles established and decisions rendered in *National Bank of Cal.* v. *Miner, supra,* 167 Cal. 532, and *Crocker-Woolworth Bank* v. *Nevada Bank, supra,* 139 Cal. 564. This is incorrect.

This section provides that each "collecting bank" obtaining payment of an item warrants to the buyer that it has good title or is authorized to obtain payment. California Code Comment 1 to this section of the Commercial Code states quite clearly that this section changes prior California law only in that it changes the basis of recovery against collecting banks from a negligence theory to a warranty theory, and that it does not change the rules or principles by which such recovery is estab'ished. Furthermore, as heretofore indicated, respondent was not acting as a collecting bank within the embrace of the sections now urged as being applicable.

Construing the uncontradicted facts in the record with every doubt and probable inference resolved in Frontier's favor, we find no basis for a cause of action against Home.

The motion for summary judgment in favor of Home was properly granted.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.